A *sentence* of a court of *admiralty* is sufficient evidence of a condemnation, without showing the previous proceedings; and a copy of the sentence under the *seal* of the court, signed by the *actuary*, in the absence of the *register*, accompanied with a deposition of a witness proving the *seal* and signature, was held a ·ufficient authentication. Whether the se:.' of a court of *admiralty* is not, of itself, evidence? *quære.* Where a policy of insurance contained a clause of warranty as neutral property, and also a clause " that in case of loss or misfortune, it shall be lawful and necessary for the assured, his factors, servants, and assigns, to sue for, labour and travel, in and about the defence, safeguard and recovery of the property," &c. it was held, that in case of capture,the assured or their agents were not bound

GARDERE *against* THE COLUMBIAN INSURANCE
COMPANY.

THIS was an action on an open policy of insurance, dated the 19th of *November*, 1807, upon cargo, on board of the brig *Eliza*, at and from *Mai tinico* to *New-York*. The policy contained the following printed clause : " In case of any loss or misfortune it shall be lawful and necessary for the assured, his factors, servants, and assigns, to sue for, labour and travel, in and about the defence, safeguard, and recovery of the said goods and merchandises, or any part thereof, without prejudice to this insurance, to the charges whereof the said insurance company will contribute according to the rate and quantity of the sum herein insured."

There was also, at the bottom of the policy, the following written clause : " *Warranted American property*, and in case of capture or detention not to abandon, if the property is acquitted or released, in six months after advice is received here, and notice thereof given to the said company."

The cause was tried at the *New-York* sittings, in *June*, 1810, before Mr. Justice *Yates*.

The vessel, with the goods on board, sailed from *Martinico* the 26th of *October*, 1807, and while on her voyage, was captured, on the same day, by a *British* privateer, and carried into *Nevis*. The cargo was libelled and proceeded against as *French* property ; and the master was examined as a witness in the vice-admiralty court of *Antigua*, where he was sent for that purpose. The goods were condemned, on the 25th of *November*,

to put in a claim or appeal; and though the property was condemned because no claim was interposed, yet the assured were entitled to recover; for the assured has a right to abandon immediately on advice of the capture; and after an abandonment rightfully made, the master becc mes the agent or servant of the insurers, and is answerable to them for his misconduct or neglect.

1807, as prize to the captors, who were ordered to pay the freight and expenses. The cargo was then landed by the master, who took in a freight, and left the island.

An abandonment was made by the plaintiff, on the 11th of *January*, 1808, and a suit brought to recover a total loss on the 1st of *May*, 1808. The plaintiff became a naturalized citizen of the *United States*, in 1793, and the goods condemned were proved to be his property. The sentence of the vice-admiralty court at *Antigua* was produced, which stated, " that three preparatory depositions, taken at the island of *St. Kitts*, were read, and no claim having been interposed, his worship, the judge, was pleased, after hearing the arguments of his majesty's advocate-general in support of the allegations, to pronounce the said 112 hogsheads of sugar to have belonged, at the time of capture, to enemies of the crown of *Great Britain*, and as such, or otherwise, subject and liable to confiscation, and condemned the same as good and lawful prize," &c. The decree was certified and attested by *Thomas Thomas*, actuary, in the absence of *Fountain Elwin*, deputy registrar in admiralty. To the sentence was annexed a deposition, taken in *New-York*, proving the *seal* affixed to the sentence to be the seal of the vice-admiralty court, and also proving the signature and official character of the person signing and certifying the decree.

The counsel for the defendants objected to the reading these papers in evidence, because a record of the whole of the proceedings of the admiralty court was not produced, and because the sentence was not authenticated by the signature of the judge of the court; but the objection was overruled. A motion was then made for a nonsuit, but it was also overruled by the judge, who directed the jury to find a verdict for a total loss, and the jury found a verdict accordingly for 10,570 dollars and 40 cents.

ALBANY,
Feb. 1811.

GARDERE
v
COL INS. Co.

* *Gilb Law of Ev.* 16. *Peake, Ev.* 26.

† *Marsh.* 714.

‡ *3 East,* 221.

§ *Vos & Graves v. Unit. Ins. Co.* 2 *Johns. Cas.* 187. *Kent, J. Vandenheuvel v. Unit. Ins. Co.* 2 *Johns. Cas.* 151. 154. *Benson, J.*

¶ *Galbraith v. Gracil, Condy's* edit *Marsh.* 406. b. in note.

** 1 *Johns. Rep.* 364.

A motion was made to set aside the verdict, and for a new trial.

*C. I. Bogert,* for the defendants. 1. The whole of the proceedings in the vice-admiralty court ought to have been produced. They are matter of record; and where a record is produced in evidence, it should be the whole.* The sentence, accompanied with the proceedings, is the evidence whether there has been a compliance with the warranty or not.† It is important, that the whole proceedings should be produced; for it appears from the sentence, that the master was examined *in preparatorio,* and it may be that the vessel was condemned on his evidence.

2. Another objection is, that the record produced was not properly authenticated, so as to render it admissible. It was not signed by the judge of the court, nor the register or deputy register.‡

3. The condemnation was caused by the negligence or misconduct of the master; and the owners take the risk of the master's ignorance, negligence, or misconduct. No fault short of *barratry* can make the insurers liable.§ The policy enjoins it on the insured and his agents to do every thing in their power for the preservation and safeguard of the property. Our policy is different from the *English* policies. It says, " It shall be lawful and *necessary,*" &c. A neglect of duty, which occasions a condemnation, is the same as if the loss had been produced by an *act* of the master.¶ Though examined in the admiralty court, the master put in no claim in behalf of the owners; and in consequence of this gross negligence, the property was condemned. He was owner of the vessel, and was interested in obtaining a new cargo, by which he might earn a double freight. The master was bound to put in a claim, and to use his exertions to prevent a condemnation. This was so laid down in *Cheviot v. Brooks.***

*Colden* and *T. A. Emmet*, contra. There are three modes of proving the proceedings in the admiralty, by an *exemplification*, a *sworn* copy, or an *office* copy. The sentence produced was an *office* copy, signed and certified by a proper officer of the court. It was not necessary to prove the sentence. All persons are bound by the proceedings in an admiralty court, and must take notice of them under the seal of the court. The *seal* of a court acting under the *law of nations*, is evidence of itself.*

There is a distinction between the evidence of the proceedings of a civil or municipal court of a foreign country, and those of a court acting under the law of nations. Though proof of the seal of the former may be required, that of the latter is always considered as evidence without further proof.†

But it is said, that all the proceedings of the court should have accompanied the sentence.

KENT, Ch. J. You need not argue that point.

Then there is no legal evidence that the master did not put in a claim. The sentence is evidence only of the fact of a condemnation as good and lawful prize. If the condemnation was sufficient to enable the plaintiff to bring his action within six months, it was all that was requisite. But we contend that the master is not bound to put in a claim. The introduction of the words, *it shall be lawful and necessary* for the assured, &c. in the policy, instead of the words, " it shall be lawful," does not vary the meaning or effect of the whole clause taken together. The insured, immediately, upon receiving intelligence of a capture, may abandon; he is not bound to make any claim or appeal to the courts of admiralty, or to litigate the validity of the capture, but may leave that to the underwriters.‡ After the abandonment, the master becomes the agent or servant of the insurer; and if the

ALBANY,
Feb. 1811.

GARDERE
v.
COL. INS. Co.

* *Peake's Law of Ev.* 74. (3d edit.) 73. and note. 2 Lord *Raym.* 893.

† 8 *East*, 221. 3 *Johns. Rep.* 310.

‡ *Marsh.* 564. 2 *Burr.* 696. 3 *Term Rep.* 479.

ALBANY,
Feb. 1811.

GARDERE
v
COL. INS. CO.

insurer sustains any injury, in consequence of his neglect, he may bring his action against the agent. The point decided in the case of *Cheviot* v. *Brooks*, is in favour of the plaintiff. The observation, that the master ought to have interposed a claim, is merely an *obiter dictum* of the judge. The plaintiff claims a loss by capture, not by the fault of the master. If the subsequent conduct of the master is such as to amount to barratry, it does not follow that the plaintiff may not recover on the first ground, as it was a valid cause of abandonment. But the property was not condemned solely on the ground that no claim was interposed, but on the examinations taken *in preparatorio*. The captors were bound to show by the answers to the standing interrogatories, that they had a right.‡ How does it appear that the master was guilty of any negligence? He may have been in prison, or sick. The vessel was carried into *Nevis*, and the proceedings were in the admiralty court at *Antigua*.

* *Home's Compendium of Statutes*, &c. 35. 39. 47.

*S. Jones*, junior, in reply. Examinations *in preparatorio* are merely for the purpose of enabling the captors to decide whether they will file a libel or not. If a libel is filed, and no claim is put in, a condemnation follows of course. Sufficient appears in this case to show that no claim was interposed. I contend that the master is bound to put in a claim; by his neglecting to do so, the plaintiff has acquired the right to abandon in this case. The property was warranted *American*, and if a claim had been interposed, the condemnation would not have taken place. The master may not have been guilty of intentional fraud; but his conduct was grossly negligent. In *Cheviot* v. *Brooks*, which was an action brought by the principal against the agent, the court said, that a master was bound to put in a claim; but as in that case he acted *bona fide*, he was not answerable to his principal. Here a third person, the insurer, is to be affected by the negligence of the master, and the principal ought to be responsible.

YATES, J. delivered the opinion of the court. It was not necessary to produce all the proceedings of the court of admiralty previous to the decree. Sufficient appeared by it to answer the legal purposes of the plaintiff. His object was to show that the sugar had been condemned; and that fact is fully established by the sentence. If there could possibly exist a doubt, as to the sentence of condemnation, by omissions or ambiguity appearing on the face of the record, it might be proper to require such proof. This could not exist here. The decree read in evidence explicitly states the fact material to be proved by the plaintiff. The case of *Jones* v. *Randall* (*Cowp.* 17.) shows that such proof is sufficient, unaccompanied with the previous proceedings. That was an action upon a wager, whether a decree in the court of chancery would be reversed on an appeal to the house of lords; and upon a rule to show cause why there should not be a new trial, among the objections stated by the defendants, one was, that the previous proceedings in the house of lords ought to have been shown, whereas the decree only was produced; and the court decided, that proof of the decree and of its reversal was sufficient, without such previous proceedings.

The sentence of the court of vice-admiralty at *Antigua*, given in evidence, was sufficiently established by the deposition annexed to it, stating that the seal affixed thereto, was the seal of the court, and also proving the signature and official character of the person whose name was subscribed. It is, therefore, unnecessary to notice the distinction urged in the argument, between foreign *municipal* tribunals, and courts of admiralty. There was a sufficient authentication in this case, to receive the proceedings of the court of admiralty in evidence, although not signed by the judge. (*Peake's Evid.* 48.) Their decree, in this instance, was, consequently, properly admitted; and the condemnation was fully proved. The condemnation gave the plaintiff a right of action, and there

is no force in the objection, that no such right existed when this suit was commenced. The action might be brought, without violating the clause in the policy, that " in case of capture or detention, the insured were not to abandon, if the property is acquitted or released, in six months after advice is received and notice thereof given to the company."

Another objection relied on, in the argument, was founded on the alteration in the language of the policy, by the insertion of the word *necessary*, in the clause, which now is, " that in case of any loss or misfortune, it shall be lawful *and necessary* for the assured, his factors, servants, and assigns, to sue for, labour and travel in and about the defence, safeguard and recovery of the property," &c.

Previous to this alteration, the construction of the above clause was well understood ; and I can discover no substantial reason why the insertion of the word *necessary* should so essentially alter the construction, as to create a different operation. It imposes no additional duties on the master. He was before bound to labour diligently for the recovery of the property, and to alleviate the burdens of the insurer. This is a well settled rule ; yet it is equally well established, by the law of insurance, that this does not affect the right of abandonment. The case of *Tyson* v. *Guerney* (3 *Term Rep.* 477.) is in point; that if a ship be taken and condemned as prize, the assured might call on the insurer, without being under the previous necessity of appealing, or even making a claim. By abandoning and calling on the insurers, the assured yields up to them all his right, title, and interest in the subject insured, and it operates, in judgment of law, as a transfer of the property; and the captain, from that time, becomes the agent of the insurers. This doctrine has been frequently recognised by this court. (2 *Caines' Rep.* 284. 5 *Johns. Rep.* 324.) The captain, consequently, is answerable to the insurers for his default, if any exists. The assured is not obli-

ged to put in a claim; nor can the clause warranting it to be neutral property, create this duty. The judgment of the court of admiralty was not grounded on a want of claim, but on proofs, and as being enemies' property. But admitting the neglect to claim the goods was *barratry*, in the captain, the loss is still by capture and condemnation. And if, even, the plaintiff had a right to recover on the *barratry*, that cannot devest him of his right to recover on an event which has happened, and against which he was insured. If the condemnation is illegal, the remedy must be sought by the underwriters, and they may appeal. A contrary construction on those clauses in the policy, would make the putting in the claim, &c. a condition precedent, and necessarily introduce principles, in relation to the rights of the assured, materially different from what are now allowed to be the law on the subject.

Besides, if the captain's neglect in not putting in a claim, created a sufficient defence in the suit, (and that could only be on the ground that he still continued the agent of the assured, and that the loss proceeded immediately from him, which cannot be the case here,) yet the fact ought to have been affirmatively proved by the defendant, and not left to inferences drawn from the language of the sentence of condemnation; when, for aught that appears, the captain may have put in a claim which might have been adjudged insufficient. Although the sentence is conclusive evidence of the condemnation, it is not evidence of such neglect. It would be a dangerous principle, that a fact within the power of the defendants to prove directly, should, when thus collaterally introduced, be allowed to defeat the recovery of the plaintiff. We are, therefore, of opinion, that the plaintiff is entitled to his judgment.

Judgment for the plaintiff.