### GIBSON *v.* ROBINSON.

1. Where, in an action upon an administrator's bond, the contents of the bond and a breach thereof are substantially set forth in the declaration, it was not necessary to attach to the declaration a copy of the bond itself.   Nor was it error to admit the bond in evidence over an objection " that as the bond sued on, or a copy, was not attached to the declaration, there was no evidence that the bond introduced was the one sought to be enforced."

2. Where an administrator is sued upon an alleged debt of his intestate and fails to plead a want of assets, a judgment against him in such suit is conclusive upon him of a sufficiency of assets to pay the debt.   But as to a surety upon the administrator's bond, such judgment is *prima facie* evidence merely, and inconclusive upon this question; and when sued upon such bond, the surety may plead and prove a deficiency of assets in the hands of his principal liable to the payment of the debt.

3. As a general rule, where a judgment is relied on as an estoppel, or as establishing any particular state of facts of which it was the judicial result, it can be proved only by offering in evidence a complete and duly authenticated copy of the entire proceedings in which the same was rendered.   Yet, where the only direct object to be subserved is to show the *existence and contents* of such judgment, a properly authenticated copy of the judgment entry of a court of record possessing general original jurisdiction is admissible, without more, and on being admitted, all the legal incidents attach which the law annexes to judgments of that class.

4. An entry, as follows, by a sheriff upon an execution *de bonis testatoris* rendered against an administrator, " After search and inquiry I know of no property of the defendant in the county of Jones upon which to levy this *fi. fa.*," should be construed as meaning that the sheriff can find no property in the hands of the administrator belonging to the estate of his intestate, and is a sufficient return of *nulla bona.*   The person named as defendant in the ex-

ecution being described as "administrator," etc., reference to him by the sheriff in his entry as "defendant" merely, is an attempt to designate such person in his *representative*, not in his *individual*, capacity.

5. The court erred in directing a verdict for the plaintiff.

February 9, 1893.

Administrator's bond. Pleading. Evidence. Principal and surety. Judgment. Sheriff's return. Before Judge Ross. City court of Macon. March term, 1892.

1. This was an action on an administrator's bond. The defendants demurred to the declaration, because the bond sued on, or a copy, was not attached thereto. It is assigned as error that the court overruled the demurrer without requiring the plaintiff to attach such copy, and without an offer by plaintiff to do so. The declaration alleged that on the 31st of August, 1889, O. C. Gibson of Jones county, and W. C. Gibson of Bibb county, entered into an administrator's bond, jointly and severally obligating themselves in the sum of $6,500 that O. C. Gibson should administer according to law upon the estate of Lucinda A. Gibson, deceased, late of Twiggs county; that the estate which went into the hands of O. C. Gibson to be administered was of the value of $5,000 or other large sum; that Lucinda A. Gibson at her death was indebted to Edith H. Robinson, plaintiff's usee, $1,200 besides interest and attorney's fees on a promissory note which O. C. Gibson, administrator, failed to pay; that at the April term, 1891, of Jones superior court, Edith H. Robinson sued O. C. Gibson as administrator, on the note, and at the next October term obtained judgment against the administrator as such for $1,200, interest, attorney's fees and costs, upon which judgment, the administrator having failed to pay the same, an execution was issued against the lands and tenements, goods and chattels, rights and credits of Lucinda A. Gibson, deceased, which were in the hands of her administrator to be adminis-

tered; and that the sheriffs of Jones and Twiggs counties have made return that there is no property of Lucinda A. Gibson in either of those counties upon which to levy the execution : by reason of which facts a breach of the bond has been established, and O. C. Gibson and W. C. Gibson have become jointly and severally bound to pay plaintiff the amounts aforesaid, which they refuse to pay, etc. Error is further assigned on the admission in evidence of the administrator's bond of O. C. Gibson principal, and W. C. Gibson security, for $6,500, dated August 31, 1889, on the estate of Lucinda A. Gibson, deceased, containing the usual conditions of an administrator's bond.

2. On motion the court struck the pleas of defendant W. C. Gibson, which ruling also is excepted to. These pleas were, in brief, as follows: (*a*) He is not indebted to plaintiff in any amount, and the judgment obtained by plaintiff in Jones superior court is not binding or conclusive upon him as surety. It was obtained against the administrator, not on account of any laches or fault of him or his surety, but as the result of mistake and misinformation under which the administrator was laboring. He did not receive $5,000 belonging to the estate of Lucinda A. Gibson, nor any other large sums; the total amount received by him aggregated $1,607.90. In his return to the ordinary of Twiggs county, he sets up that he received and collected certain notes on Sol. Mitchell for $294, Frank Ryals $85, J. R. Van-Buren $60 and $87, and the joint note of Willian Witt, James Leasley and C. Lewis, $50; which notes should never have been included in the return as belonging to the estate, and should never have been appraised as the property of the estate. The reason they were so appraised and returned was: Lucinda A. Gibson before her death owed debts to A. B. Small, Rogers, Worsham & Co., Lawton & Smith, agents, and others,

which debts were all being pressed for payment; she asked defendant W. C. Gibson to pay them off for her, and to receive and hold the notes of Mitchell and others above stated, and to collect the money on them to reimburse himself; he informed her that he did not then have the money to make this arrangement, but O. C. Gibson did arrange with her to do as stated, and with her full knowledge and consent and at her urgent request paid A. B. Small $100, Rogers, Worsham & Co. $100, Cobb, Cabaniss & Cobb $30, Lawton & Smith $50, Tunnell $187, and D. J. Baer $100 on an execution against her, making a total of $567 paid out by him on her debts, leaving a difference of $9 between the amount of the notes turned over to him by her, and the amount he so paid out. When the appraisers undertook to appraise her estate, O. C. Gibson objected to having the notes so turned over to him appraised as part thereof, but did not then know what amount he would pay out for her on her debts, and consequently did not know but there would be an overplus in favor of the estate after he had collected the notes and paid the amounts on said debts; and in order to provide against such contingent overplus he allowed said notes to be appraised as property of the estate. He informed the appraisers that the notes did not belong to the estate but that they were his personal and individual property, and he only consented for them to be appraised, thinking there would be a small balance in favor of the estate. They should never have been included in his return, and he is sought to be held responsible for them as the property of the estate, when in fact the title to them was in him and not in the estate. (b) The administrator paid out $908.84 on debts superior to the debt of Edith Robinson, viz.: burial expenses $45, State and county tax $24, W. H. O'Pry, selling land, $16, J. R. Wimberly, ordinary, $32, Estes

& Estes, professional services, $200, R. S. Collins, execution, $150, Wood & Bond $55, Johnson & Lane, note, $267, O. C. Gibson, commissions for receiving and paying out funds on the estate, $119.84. There is still a balance of about $250 due on the execution of D. J. Baer *vs.* Lucinda A. Gibson, which is a lien superior to that of Edith Robinson. There is a judgment held by J. W. Nesbit, transferee, for $250, obtained in the lifetime of Lucinda A. Gibson, which is a lien superior to the judgment of Edith Robinson. This judgment is now being contested upon an affidavit of illegality in Twiggs superior court, and if it is decided against the estate, it will have to be paid out of the funds in the hands of the administrator. Besides, a suit against the estate is pending in Jones county in favor of Phil. M. Berg for $80; and there are outstanding claims against the estate, notice of which has been given to the administrator, viz.: Bridger & Baker, account, $25, D. F. Sanders, account, $25.50, John Nichols, note, $125. All the money from every source belonging to the estate that came into the hands of the administrator, was $1,250 realized from the sale of land, and $357.90 from the sale of personalty. The failure of the administrator to file proper pleas to the action of Edith Robinson was due to his mistake and misinformation, for which failure the surety is not liable. If proper pleas had been filed and proved, Edith Robinson would never have obtained judgment for the amount now insisted on. Since the judgment was obtained, new facts concerning the condition of the estate have come to the knowledge of the administrator, which facts are entirely newly discovered, and which the security is justly entitled to urge and insist on for his protection and benefit. Among other things, the administrator has found certain vouchers and receipts showing that claims against the estate had been settled and paid, which receipts he did not

have on the trial of said case, and therefore could not use them in preparing a meritorious defence to the action of Edith Robinson. These vouchers and receipts are now in the hands of the administrator, and are subject to the use of the surety. The administrator in good faith paid out various sums on claims which he believed were entitled to payment in preference to the debt of plaintiff in this case, and his mistake has since been made known to him by his attorneys. The surety insists that he is entitled to show the respective ranks and dignity of these claims so paid, in order that he may justly and fully be protected. For the reasons above stated, as well as the broad principles of equity and justice which protect securities in every instance, the judgment of Edith Robinson should not be enforced for its full amount, but should be reduced in proportion to the amount remaining in the administrator's hands after claims superior to it have been paid. Many suits are pending against the estate; the administrator will be compelled to employ counsel to defend them; further indebtedness will be incurred, such as ordinary's fees, commissions to administrator, etc., to cover which items the administrator will be authorized and compelled to appropriate a sufficient sum of the money of the estate; and after these are paid not more than $500 will be left. It would be inequitable for Edith Robinson to have applied to her judgment a greater amount than her *pro rata* share of money which the administrator actually has on hand after claims superior to her own have been paid.

3, 4. The plaintiff introduced a certified copy of a judgment *de bonis testatoris*, rendered at the October term, 1891, of Jones superior court, in favor of Edith H. Robinson *v.* O. C. Gibson, administrator of Lucinda A. Gibson, deceased, for $1,200 principal, $283.44 interest, and $148.34 attorney's fees. Objection was made on

the ground that the copy was not accompanied by the record of any suit showing the judgment to have been properly rendered, and that it did not appear that any suit had been instituted or was pending in Jones superior court on which to base such judgment, and that the judgment was not admissible to charge the surety with liability to the plaintiff. The objection was overruled. An objection was made also to the execution based on this judgment, as to which see the fourth part of the opinion.

5. The court directed a verdict in favor of the plaintiff for the amount sued for, and exception was taken.

C. C. KIBBEE and ESTES & ESTES, for plaintiff in error.
GUSTIN, GUERRY & HALL, *contra.*

LUMPKIN, Justice.

1. The plaintiffs in their declaration set forth substantially the contents of the bond sued on, and the facts constituting a breach thereof. Certainly, this is all that could be required of them. The form of pleading set forth in section 3391 of the code, commonly known as one of the "short" forms, is but cumulative in its character; its use is permissive, not obligatory. It follows, without argument, that there was no merit in the objection urged to the admission of the bond itself in evidence, on the ground that neither the original bond nor a copy thereof being attached to the declaration, "there was no evidence that the bond introduced was the one sought to be enforced."

2. The principle contained in the second head-note has been so often recognized by this court as to have become settled law in this State. It was announced as far back as the first volume of our reports (*Bryant, guardian,* v. *Owen & Wife,* 1 *Ga.* 355), and as said by Justice BLANDFORD, in *Bennett, ordinary,* v. *Graham, adm'r,* 71 *Ga.* 213, " such have been the continuous and uninterrupted rulings of this court." (See cases cited.)

Further than to say we think the principle fully applies to the facts of this case, discussion of the subject would seem unnecessary and unprofitable. It was error to strike the special pleas filed by the surety on the bond, the court holding, in effect, that the judgment rendered against the administrator in favor of the plaintiffs was equally binding upon the surety. The pleas were at least good in substance, and the surety being deprived by such erroneous ruling of so important a branch of his defence, the case must be sent back for a new trial.

After defendant's special pleas were stricken, certain evidence was sought to be introduced in defence under the plea of the general issue. To the refusal of the court to allow the introduction of such evidence, numerous grounds of exceptions are presented. From such consideration as we have given to the evidence thus set forth, it would appear that no question as to its admissibility could arise if the tender was made under the pleas which were improperly stricken by the court. This being so, under the ruling herein made, these questions will not likely arise upon the rehearing of the case, and therefore need not be considered further.

3. It is well recognized as a general rule, that where a judgment is relied on as an estoppel, or as establishing any particular state of facts of which it was the judicial result, it can be proved only by offering in evidence a complete and duly authenticated copy of the entire proceedings in which the same was rendered. But where the only direct object to be subserved is to show the *existence and contents* of such judgment, this rule does not apply, and a certified copy of the judgment entry of a court of record possessing general original jurisdiction is admissible, by itself, to prove rendition and contents. 2 Black. Judg. §604; 1 Greenl. Ev. §511. Such entry will be *prima facie* evidence of a valid judgment, and on being admitted, all the legal incidents attach which

the law annexes to judgments of that class. It will not, however, be conclusive either of jurisdiction of the parties, service, or of any other matter material to the rendition of a valid judgment; and of course, if the party against whom it is offered can derive any benefit from proving the antecedent or subsequent proceedings, or the want of any legal essential, he is still at liberty to introduce the entire record. Thus it will be seen that the exception to the general rule, while of material advantage and convenience to the one, can result in no hardship upon the other of the parties. The reasons for this exception, as well as those which support the general rule, will appear upon examination of the following cases, which we cite as persuasive authority for the ruling announced in the third head-note: Adams v. Olive, 62 Ala. 418, following previous decision in Locke v. Winston, 10 Ala. 849; Starke v. Gildart, 4 How. 267; Carson v. Huntington, 6 S. & M. 111; Henderson v. Cargill, 31 Miss. 367; McGuire v. Kouns, 7 T. B. Mon. 386; Chinn v. Caldwell, 4 Bibb, 543; Lee's adm'x v. Lee, 21 Mo. 531; Haynes v. Cowen, 15 Kan. 637; Rathbone v. Rathbone, 10 Pick. 1; Gardere v. Ins. Co., 7 Johns. 514; Jones v. Randall, Cowp. 17; Clark v. Herbert, 15 La. An. 279; Stafford's Succession, 2 La. An. 886; Price v. Emerson, 14 La. An. 141.

Rightly understood, the case of *Mitchell* v. *Mitchell*, 40 *Ga.* 11, presents no conflict with what we have just ruled. A verdict of a jury is not a judgment or decree, and even when accompanied by the pleadings, would not be admissible in evidence for most purposes if no judgment or decree appeared. In *Dupont* v. *Mayo*, 56 *Ga.* 304, the judgment or order of the ordinary was sought to be used as adjudicating a discharge of one of the sureties on a prior bond, and as operating incidentally to discharge a surety on the bond in suit. The judgment of discharge, so far from declaring that the

guardian was then required, or had been required, to execute a third bond to take the place of the first, indicated on its face that the third was a voluntary bond. It sought to substitute this voluntary bond for the first of the preceding bonds, and declared the discharge of Smith as the result of this substitution. The guardian had been, previously required to give the second bond as an addition to the first. He had complied with this requisition, and his compliance was expressly announced by an order passed by the ordinary. After this took place, and without any further citation of the guardian or any further requirement made of him, another term of the court arrived, and at that term a voluntary bond previously executed was offered and accepted, and the discharge of Smith declared. This discharge was consequently based, apparently, on no proper statutory proceeding. The terms of the order indicated some informal proceeding by consent; and this being so, it devolved upon the party seeking to introduce the order to show the essential preliminaries. The reasoning of the opinion may go too far, but limited and explained by the facts of the case, it led to no incorrect result.

A judgment is the conclusion of the law upon matters contained in the record. Whenever it is sought to establish the conclusion merely and the contents thereof, the judgment is admissible by itself; but when the object is to show any of the premises from which the conclusion was drawn, then the whole record must be produced. The contents of the judgment, the relation of the parties, or other facts expressed therein, are part and parcel of the conclusion. So, likewise, are any legal incidents which the law attaches to these contents.

It only remains to apply the doctrines above announced to the facts of the case now under consideration. In order to show a right of action on the bond, it was incumbent on the plaintiffs to establish a *devastavit*

by the administrator. The judgment entry being *prima facie* correct, the existence of the judgment as a fact would be established. One of the questions the judgment must necessarily have adjudicated was, "sufficiency of assets," as such is the effect the law gives to judgments of that class when shown to exist. Therefore, to prove the *devastavit*, it was necessary to show simply the existence of such judgment, execution issued thereunder, and proper return of *nulla bona*. It was only to prove the fact of rendition of the judgment, and the contents thereof, that a certified copy of the judgment entry of Jones superior court was tendered in evidence. The existence and contents of such judgment was the sole subject of inquiry so far as the suit which resulted in it was concerned, and it follows from what has been said that the trial judge properly allowed the judgment proved in the manner objected to.

4. To the introduction in evidence of the execution issued under this judgment, objection was made "on the ground that there was no proper and legal return or entry of *nulla bona* on said *fi. fa.*" Upon the *fi. fa.* are two entries, one made by the sheriff of Jones, the other by the sheriff of Twiggs county. Save as to the county named, the language employed is the same in one as in the other: "After search and inquiry, I know of no property of the defendant in the county . . . upon which to levy this *fi. fa.*" The specific objection raised to the return is, that the levying officer in each instance describing his search to have been for property of the "defendant," it is impossible to determine "whether said sheriffs meant that they could not find any property of the estate of Lucinda A. Gibson, or whether it was property of O. C. Gibson *personally* they were unable to find." The execution directs the money to be made of the "goods and chattels, lands and tenements . . . that were of the estate of Lucinda A. Gibson, and that may

·have come into the hands of O. C. Gibson as the administrator of her estate to be administered." It would therefore seem to us that the most natural, reasonable and sensible construction which could be given to the returns in question would be, that the .levying officers conducted their search for property such as is described in the *fi. fa.*, rather ·than for property owned by Mr. Gibson personally ; and that in speaking of him in their returns as "defendant" merely, they meant to refer to him in his *representative*, not in his *individual*, capacity. But even if equally susceptible of the construction contended for by counsel, our decision must be the same, for : "The return of an officer should receive every reasonable intendment and construction, and where it is susceptible of different meanings, that meaning must be adopted which is most conformable to his legal duty. The question must be whether, by a rational construction of the return, the requisite facts appear. . . . The use of the return is to show the truth of the matter to the court, and the certainty of common-law pleading is not required in it. If there be ambiguity in it, it is the rule that, as the sheriff has acted officially, the construction given should be that most favorable to his having discharged his duty." Murfree on Sheriffs, §864.

5. It necessarily follows from what has been said in the second division of this opinion, that the trial judge further erred in directing a verdict in favor of the plaintiffs in the court below.          *Judgment reversed.*