WORTHY, administrator, *v.* BATTLE *et al.*

1. An estoppel in pais does not arise in favor of the sureties on an administrator's bond when it appears that the heirs at law, after citing him to account for the proceeds of land sold by him at public sale, recovered the land in an action of ejectment brought against the purchaser at the sale, but subsequently lost possession thereof when it was subjected to the demands of a mortgage creditor of such purchaser, as against whom they were estopped from attacking the validity of the administrator's sale, because of their prior election to claim the proceeds of the land.

2. In a suit against the sureties on the bond of the administrator, prima facie proof of a devastavit committed by him may be made by introducing in evidence the judgment against him (unaccompanied by any part of the record of the proceedings in which it was obtained) and showing by proper entries upon the execution issued thereon that there is no property of the estate upon which to levy. A return of nulla bona reciting that there is no property of the "defendant" to be found is to be construed as meaning that the levying officer can find no property in the hands of the administrator which belongs to the estate of his intestate, not as referring to an unsuccessful search for property belonging to the person named in the fi. fa. in his individual right.

3. When the defendant to such a suit is the legal representative of one of the sureties on the bond, a plea of plene administravit may be met by the introduction of evidence disclosing that the defendant's testator left property which was subject to the plaintiff's demand and which *ought* to be in the defendant's hands for administration.

4. The bare fact that the defendant had also been appointed administrator of the sole beneficiary under the will of the testator and had assumed charge of the assets of his estate in that capacity, not as administrator de bonis non cum testamento annexo, affords no reason why judgment in favor of the plaintiff should not be rendered against him in the capacity in which he is sued.

5. Where the issue is whether or not a devastavit has been committed by an administrator, the opinion of witnesses that the estate represented by him was insolvent at the time of the death of his intestate is of no probative value.

6. Sureties on an administrator's bond can not, by any private understanding amongst themselves, fix their liability relatively to any person not a party to their agreement. If they agree to discharge the indebtedness of the estate out of their private funds and to waive all right to reimbursement by the administrator, they do not become creditors of the estate by carrying out this voluntary undertaking. But if, after doing so, suit upon the bond is brought against them by the heirs at law, the sureties may set up the equitable plea that but for the payment of this indebtedness the heirs could have hoped to receive little or nothing from the estate, and therefore the fact that they were benefited by the payment of its debts should be taken into consideration in determining how much they really ought to have realized as their distributive share of

the assets. The sureties having discharged the indebtedness in order to escape threatened liability to creditors under the bond, the doctrine of equitable subrogation applies in such a case.

Argued February 28,—Decided May 16, 1906.

Action on bond. Before Judge Littlejohn. Sumter superior court. February 22, 1905.

In June, 1885, J. Randolph Battle, of Schley county, died intestate, leaving an estate consisting of both realty and personalty. During the same year, William J. Ross and C. L. Ross were duly appointed administrators upon his estate, and among the sureties signing their bond were K. L. Worthy and Mrs. Edna L. Battle, the widow of the intestate. All of the lands belonging to the estate were sold at administrators' sale, Mrs. Battle becoming the purchaser. She afterwards conveyed by deed to Mrs. A. S. Ross, the wife of one of the administrators, a portion of the land known as the "Ross place." In September, 1887, K. L. Worthy and some of his cosureties on the bond brought an equitable proceeding in the superior court of Schley county against Mrs. Battle, Mrs. Ross, and the administrators, for the purpose of setting aside the sale by the administrators and subjecting the lands to the payment of the debts of the estate. Petitioners alleged, that the defendants had colluded and confederated for the express purpose of defeating the claims of creditors; that at the sale bystanders were persuaded not to bid, and as a consequence the lands brought much less than their value; that Mrs. Battle did not in fact become the purchaser and pay the amount of her bid, but that money belonging to the estate was used by her in carrying out the pretended and fraudulent sale; that the administrators neglected to pay off the debts of the estate, and had misappropriated the assets thereof to their own use; and that unless petitioners were granted the relief for which they prayed, they would suffer loss by being held liable as sureties upon the bond of the administrators. An answer was filed by the defendants, in which they denied all charges of fraud made against them; but no trial was ever had upon the merits. After the granting of an injunction and the appointment of a receiver, the respective parties to the litigation agreed upon a settlement of the controversy, and a consent decree was taken in accordance with the terms of the compromise. By this decree the sale of the lands by the administrators was confirmed; the deed from Mrs. Battle to Mrs. Ross was set

aside on the ground that it was without consideration, and a deed to the "Ross place" from Mrs. Battle to petitioners was also confirmed. Under the terms of settlement, Mrs. Battle agreed to execute this deed, contributing the land covered thereby towards the payment of the debts of the estate; and petitioners agreed, in their capacity as sureties on the bond, to discharge all the debts of the estate, as shown by a schedule thereof attached to the written agreement, which amounted in the aggregate to between $3,000 and $4,000. The heirs of the intestate, other than his widow, were not parties to this litigation, nor were they called on to consent to the settlement agreed on. In September, 1895, Mrs. Battle joined with these heirs in applying to the court of ordinary for a citation against the administrators for an account and settlement, and in October of that year judgment was rendered in that court against the administrators for the principal sum of $5,935.97, besides interest, as representing the distributive shares of the heirs of the estate for which the administrators had not accounted. On their entering an appeal to the superior court, the case was referred to an auditor, and to the report made by him both sides filed exceptions. The final judgment rendered in that court was in favor of the plaintiffs, it being adjudged that the administrators were due Mrs. Battle the sum of $103.85 principal, and that the other heirs should recover of the administrators $3,188.97, besides interest. This decree was entered on July 16, 1900.

During the month of September, 1898, and pending the proceedings last above referred to, the heirs at law other than Mrs. Battle filed against her in the superior court of Schley county an action of ejectment to recover possession of 477 acres of land, the same being a portion of the land purchased by her at the sale made by the administrators in December, 1885. A verdict and judgment were obtained by the plaintiffs in this action on April 11, 1900, and during the years 1901 and 1902 the lands so recovered were returned for taxes in their names. After the termination of this suit, a mortgage fi. fa. in favor of Cleora Wright and against Mrs. Battle, covering these lands, was levied thereon, and the heirs at law who had recovered in ejectment interposed a claim. The claim case resulted in a judgment which was adverse to them (*Battle* v. *Wright*, 116 *Ga.* 218), the property was held subject to the mortgage fi. fa.,

and was sold at sheriff's sale on February 18, 1904, to the Bank of Southwestern Georgia.

The present action was instituted on October 28, 1903, in the superior court of Sumter county, in behalf of these heirs at law, against W. B. Worthy as administrator with the will annexed of K. L. Worthy, deceased, one of the bondsmen of the administrators of the estate left by the father of the plaintiffs. It is a suit on the bond of the administrators to enforce the liability thereunder of K. L. Worthy, one of the sureties, for an alleged devastavit by the administrators and a resultant breach of the bond. The plaintiffs rely for ·a recovery upon the judgment in their favor against the administrators upon the citation for an account and settlement, alleging that the administrators have misappropriated the assets of the estate and that there is no property belonging to the estate upon which the execution issuing from that judgment can be levied. In defense to this action, the defendant averred that no assets belonging to the estate of K. L. Worthy had ever come into his hands, and challenged the right of the plaintiffs to maintain their suit, inasmuch as they had, by prosecuting their action of ejectment to recover of Mrs. Battle lands bought by her at the sale of the administrators, repudiated that sale and elected to claim adversely to the administration upon the estate of their father, and accordingly were estopped from calling on defendant to account to them for the proceeds of these lands (now in their possession) which went into the hands of the administrators. The defendant also, by way of special plea, set up the following facts: At the date of the death of J. Randolph Battle, he was insolvent, his indebtedness exceeding in amount the value of his entire estate; subsequently, K. L. Worthy and some of his cosureties on the bond of the administrators discharged debts of the estate to the amount of $4,000, or other large sum, for which amount no credit was allowed in the accounting between the plaintiffs and the administrators; and the sum so paid by the sureties exceeded in amount the claim of the plaintiffs against the administrators, as fixed by the final judgment rendered against them. The defendant specifically prayed that the amount so expended by the sureties on the bond in discharging the indebtedness of the estate should be allowed as a credit in his favor in determining the liability of K. L. Worthy in his capacity as bondsman. Pending the hearing ·of the case in the trial court, the pre-

siding judge ruled, (1) that the defendant was not entitled to a credit of the value of the land which Mrs. Battle had purchased at the administrators' sale and which the plaintiffs had afterwards recovered from her in their action of ejectment; (2) that the "Ross place," which Mrs. Battle, one of the sureties on the bond, had contributed towards the payment of the debts of the estate, was her individual property, and not that of the estate of J. Randolph Battle, which she had conveyed to her cosureties under an agreement with them whereby they obligated themselves to pay off the indebtedness of the estate; (3) that the defendant was not entitled to a credit for the amount which the sureties expended in discharging the indebtedness of the estate, nor for the amount of money actually advanced by them for this purpose, exclusive of the contribution by Mrs. Battle of the "Ross place," of the value of $1,500. Upon the close of the evidence introduced in behalf of the plaintiffs, the court overruled the defendant's motion for a nonsuit, and, after the introduction of evidence upon which he relied in support of his defense, directed a verdict in favor of the plaintiffs for the full amount sued for. The defendant presented a motion for a new trial; it was overruled, and he excepted.

*E. A. Hawkins, W. A. Dodson,* and *J. A. Hixon,* for plaintiff in error. *W. P. Wallis* and *Hal Lawson,* contra.

ATKINSON, J. (After stating the facts.) Before undertaking to deal specifically with the questions presented by the motion for a new trial, it is pertinent to observe that the sale conducted by the administrators of J. Randolph Battle, whereby the lands belonging to his estate were disposed of to his widow as the highest and best bidder, has never been judicially declared inoperative as between the parties to this litigation, or their privies, or ever been formally set aside. As early as the March term, 1888, of Schley superior court, the sureties on the bond of the administrators elected to abandon their efforts to have the sale declared void, and consented to a decree confirming it. The plaintiffs in the present case were not bound by that decree, and by prosecuting their action of ejectment against the purchaser at the sale they evinced an intention to ignore it and treat the sale as inoperative against them as heirs at law. Neither the administrators nor their sureties were parties to this litigation, and, as between them and the plaintiffs, the result of the action in no way affected the validity of the sale. The plaintiffs recovered

possession of the lands from Mrs. Battle, but they lost the fruits of their victory against her when her mortgage-creditor subjected the lands to the payment of a pre-existing claim which they were unable to defeat. They no longer hold these lands as heirs at law, and therefore there is no occasion to apply the "sound equitable principle that they can not have both the proceeds of the land and the land itself." *Battle* v. *Wright,* 116 *Ga.* 218. As was held in that case, when the plaintiffs called upon the administrators for an accounting for the proceeds of the land and obtained judgment therefor, they éstopped themselves from thereafter asserting that the sale was for any reason unlawful and invalid. So the real question to be decided upon this branch of the case is whether the defendant to the present proceeding is in a position to assert that as against him,— the legal representative of one of the sureties on the bond of the administrators,—the plaintiffs are equitably estopped from asserting a right to an accounting for the proceeds of the sale of the lands which they recovered in ejectment from the purchaser at the sale. As has been remarked, there is no estoppel by judgment against them which the defendant can assert in his defense.

1. An estoppel in pais can not be successfully urged in behalf of the defendant, unless, in view of the conduct of the plaintiffs in the past, it would be unconscionable for them now to demand their share of the proceeds of the lands sold by the administrators. The administrators were certainly not authorized to convert these proceeds to their own use simply because the plaintiffs committed the mistake of prosecuting their action in ejectment; and the sureties of the administrators are not in a position to assert the contrary. If the administrators' sale was voidable because of fraud and collusion between them and the purchaser, Mrs. Battle, the remedy of the defrauded heirs at law was to proceed to have the sale set aside and the lands resold; not to bring an action of ejectment against the purchaser. But the recovery in that action operated to the prejudice of the purchaser, and in no way affected the rights of the administrators or their sureties; and as the heirs at law eventually lost the lands and were remitted to their claim for an accounting for the proceeds of the sale in the hands of the administrators, their sureties can not in good conscience escape liability upon the idea that the conduct of these heirs at law affected the status of the administrators' sale or in any way changed the responsibility of the sureties on

their bond with respect to a proper administration of the proceeds of the lands realized at the sale. It follows that the evidence introduced by the defendant respecting the ejectment suit, as well as the record of the claim case between the plaintiffs and Cleora Wright, had no real bearing upon the merits of the present controversy, and for this reason should be disregarded. The defendant did not establish his equitable·defense that the plaintiffs were still in the possession and enjoyment of the lands which they recovered in ejectment, yet sought to hold the administrators and their sureties accountable for the proceeds thereof. The truth is, the plaintiffs have lost possession of the lands; and the court did not err in admitting evidence to establish this fact, though the burden of showing it had not been cast upon the plaintiffs.

2. All that it was necessary for the plaintiffs to show in order to establish the alleged devastavit on the part of the administrators was the *rendition* of the judgment against them and a proper return of nulla bona. *Gibson* v. *Robinson,* 90 *Ga.* 766. Upon the execution issued on that judgment was an entry by the sheriff of Schley county, dated August 21, 1900, to the effect that he had been unable to find any property of the estate of J. R. Battle in the hands of W. J. Ross and C. L. Ross, his administrators, upon which to levy, nor any property belonging to them individually. There also appeared upon the execution the following entries, one signed by the sheriff of Stewart county and the other by the sheriff of Colquitt county: "No property of defendant, C. L. Ross, to be found in Stewart county, Georgia, upon which to levy the within fi. fa. October 22, 1903." "Georgia, Colquitt county. No property of the defendant, W. J. Ross, to be found in this county upon which to levy the within fi. fa. This October 26th, 1903." Such an entry, when made on an execution issued against an administrator in his representative capacity, is to be construed as meaning that the sheriff can find no property in the hands of the administrator belonging to the estate of his intestate. *Gibson* v. *Robinson,* 90 *Ga.* 756(4). The execution also showed a levy, on September 12, 1900, upon two mules and a mare "as the property of C. L. Ross." The defendant objected to the introduction in evidence of the execution showing these entries, on the ground that a proper· return of nulla bona was not thereby made to appear. The first entry shows no property subject to levy in the county in which the intestate re-

sided at the time of his death; another shows no property of the estate in the hands of C. L. Ross, one of the administrators, in the county of his residence; and still another discloses that there are no assets belonging to the estate in the county of the residence of the other administrator, W. J. Ross, of which he is in possession as its representative. No further showing was required to establish the fact that no property belonging to the estate could be found upon which the execution could be levied.

3. Upon the close of the plaintiffs' evidence, the defendant requested the court to grant a nonsuit, on the ground that they had failed to show that sufficient assets of the estate of K. L. Worthy had gone into his hands, as administrator, to pay plaintiffs' demand, or that any assets had gone into his hands as such administrator for the purpose of administration or for any purpose. All that it was incumbent upon the plaintiffs to show was that the administrator *ought* to have in his hands sufficient assets of the estate to meet their demand. 3 Wms. Exrs. (7th Am. ed.) 538. This burden the plaintiffs successfully carried by making the following proof: K. L. Worthy made a will whereby he left all of his property, real and personal, to his wife, who was named as executrix. He died seized of personal property worth from twelve to fifteen hundred dollars, and also of a tract of land, known as the "James McGarrah place," containing some 800 acres, which he held under a deed from McGarrah dated July 25, 1870, and recorded February 17, 1888. At the time of the testator's death this land was worth six or seven dollars an acre, and at the time of the trial was worth ten to twelve dollars per acre. After his death in 1891, his widow took charge of the place and lived there for some time, and his son "Ben" (W. B. Worthy) managed the property after his father's death; nobody else has exercised ownership over the place. Mrs. Worthy died in 1893 or 1894, and on October 10, 1900, letters of administration upon the estate of K. L. Worthy were granted to W. B. Worthy, the defendant.

4. The court rejected, as irrelevant, proof offered by the defendant to show that letters of administration upon the estate of his mother, Lizzie Worthy, had been issued to him on August 7, 1893, and that by virtue thereof he obtained possession of the plantation above mentioned and the personalty used in connection therewith, the same being the property which the plaintiffs claimed

was in his hands as the administrator of his father, K. L. Worthy. As has been seen, Mrs. Worthy acquired possession of these assets of her deceased husband as his nominated executrix and the sole beneficiary under his will, and of course held them subject to the right of his creditors to enforce all just demands against him. Her administrator could hold these assets under no better claim of right or title. When, in 1900, he became the administrator with the will annexed of his father, K. L. Worthy, he placed himself under the legal duty of making proper administration of the estate of his testator, and was bound to recognize the fact that, in his capacity as the administrator of his mother's estate, his power of disposition over these particular assets was subservient to the rights of creditors of K. L. Worthy, whose just claims he was bound to recognize in his capacity of legal representative of his deceased father. If he has heretofore exercised dominion over the property as merely the administrator of his mother, it behooves him to promptly install himself as the administrator of his father by asserting proprietorship over these assets in that capacity, in order that his father's administrator and the sureties on his bond may be in a position to legally administer the estate of K. L. Worthy and escape personal liability to his creditors, if any. The plaintiffs have no concern with the administrator of Mrs. Worthy or with his actings and doings as such.

5. The court properly declined to allow certain witnesses for the defendant to state that, in their opinion, the estate of J. Randolph Battle was insolvent at the time of his death, and that the liabilities of the estate exceeded in amount the value thereof. Even if this was a proper way to prove the testator's insolvency, the evidence had no real bearing on the issue, which was whether or not the administrators had committed a devastavit. If so, the fact that the estate was insolvent would afford no excuse. It might be that creditors failed to press their demands within the statutory period, or accepted in satisfaction thereof much less than they were entitled to, and that the administrators realized more from the assets of the estate than the real value of the same. At any rate, they and their bondsmen were bound to account for what they actually received, and were only entitled to credit for what they actually expended or were under a duty still to pay before settling with the heirs at law.

6. The "Ross place" became the property of Mrs. Battle, the

purchaser at the administrators' sale of the lands of the estate of
J. Randolph Battle. That sale has never been set aside. When
she deeded that place to her cosureties on the administrators' bond,
it belonged to her, and she conveyed it to them individually, not to
the estate of Battle or to them as trustees for the benefit of the
heirs at law. By private agreement, to which the heirs were not
parties, the sureties came to an understanding as to what disposition
should be made of the "Ross place" and as to how they should pro-
tect themselves from threatened liability on their bond. The de-
tails as to this private understanding were wholly immaterial, as
also was evidence offered to show that the purpose and intention of
the sureties who paid the debts of the estate was "to settle and dis-
charge their liability on said bond." Obviously they could not, by
any such agreement amongst themselves, discharge themselves from
liability on the bond to the plaintiffs. Under the agreement had
with Mrs. Battle, her cosureties obligated themselves, in considera-
tion of her deeding to them the "Ross place," to absolutely dis-
charge all the outstanding indebtedness against the estate. The
sureties adopted this plan of avoiding liability to creditors because
of what they regarded as a fraudulent sale of the lands of the
estate at much less than their value. The agreement was entered
into for their own protection, and not for the benefit of the estate
or for the protection of the wrong-doers, the administrators. The
sureties undertook, not merely to advance the money necessary to
settle with creditors, taking from them an assignment of their
claims against the estate and looking to the administrators for re-
imbursement, but to discharge its indebtedness out of their own
pockets and to suffer the loss, if Mrs. Battle would give up to them
the "Ross place." This fact was fully recognized and pointed out
when the suit of the heirs against the administrators was before
this court. *Ross* v. *Battle,* 113 *Ga.* 742. When the administrators
were called on for an accounting, they sought to receive credit for
the amount expended by the sureties in carrying out their agreement
with Mrs. Battle, notwithstanding the indebtedness was not settled
with any assets belonging to the estate, or with funds furnished by
the administrators, or with money advanced to them or paid out in
their behalf or for the benefit of the estate. But this court held
that: "In an accounting between an administrator and the heirs
of his intestate, he is not entitled to credit for sums expended by

the sureties on his bond in settling debts of the estate, when it appears that the latter have been fully reimbursed by a conveyance to them of property not belonging to the estate, and under circumstances which will prevent them from asserting, *either against the estate or the administrator,* any claim based upon the fact that they had settled such debts." In other words, it was held that the administrators could not claim credit for an amount which they had neither paid nor were under any duty to pay, either as an outstanding charge against the estate or as a personal liability, or which the securities were not seeking to assert against the estate. This court did not, of course, then undertake to determine whether, in a suit against the sureties on the bond, they would be entitled to a credit for the amount expended by them in settling the debts of the estate. Nor was any ruling on this question made in *Ross* v. *Battle,* 117 *Ga.* 877, wherein it was held that the superior court of Stewart county was without jurisdiction to entertain a suit subsequently brought against the administrators and the sureties on their bond.

The plaintiffs are bound by their election to claim the proceeds realized from a sale of the lands of the Battle estate, rather than to repudiate the administrators' sale and have the lands resold. *Battle* v. *Wright,* 116 *Ga.* 218. This being true, it is clear that the sureties were liable under the bond for any failure of the administrators to properly account for such proceeds and other assets of the estate coming into their hands for administration. While the judgment against the administrators in favor of the heirs at law is not conclusive upon the sureties as to whether or not a devastavit has been committed (*Gibson* v. *Robinson,* 90 *Ga.* 756), yet the defendant does not pretend that upon the accounting had with the administrators they were not given credit for the full amount of their expenditures or were charged with any item for which they were not liable. On the contrary, he merely sets up the equitable plea of subrogation and asks that there be taken into account the claims of creditors which were settled by the sureties on the bond but were never paid, as they should have been, out of the assets of the estate. The question is: were these sureties, relatively to the heirs at law, subrogated to the rights of these creditors, to the extent of the amount expended in order to discharge their just demands against the estate? The administrators ought to have paid the creditors

in full, if possible, and the heirs at law were not entitled to receive a cent until the indebtedness of the estate was settled in full. By the arrangement made with Mrs. Battle, one of the sureties, all of the indebtedness was discharged by the payment of a sum far less than the aggregate amount of the claims of the creditors, who were pressing their demands by suit and otherwise. The advantageous settlement made with creditors operated directly to the benefit of the heirs at law, who stood little chance of receiving anything as their distributive share of the badly involved estate. This much appears from the record before us. Under the terms of the agreement under which the sureties discharged this large indebtedness, they waived all right to reimbursement by the administrators out of the assets of the estate, agreeing among themselves to suffer an individual loss and to permit the administrators to deal with the assets coming into their hands as though no debts were outstanding, and to administer the estate according to law. They did not, however, contemplate or consent to a devastavit by the administrators, or waive any legal or equitable defense which they would be in a position to assert against the heirs at law if ever sued upon the bond. Had the sureties paid the debts of the estate as mere volunteers, they would have no standing even in a court of equity, since as intermeddlers with the affairs of the estate they could not assert the rights of creditors unless they took a legal transfer or assignment of the claims which they undertook to settle, and duly called upon the administrators for payment thereof. But these sureties did not act as mere volunteers. The administrators had subjected them to threatened liability on their bond, and they settled with creditors in order to escape being held responsible to them for an improper administration of the estate. What the sureties in effect did was to remove an "incumbrance" upon the estate which had to be discharged before the plaintiffs could hope to receive any of its assets upon their claims as heirs at law. If the facts set up in the defendant's equitable plea be true, it would be unconscionable to allow the plaintiffs to take the benefit which they derived from the payment by the sureties of the indebtedness of the estate, and at the same time ignore the fact that the superior claims of creditors were discharged with private funds furnished by the sureties for that purpose.

The defendant introduced as a witness W. M. McGarrah, one of

the sureties, who testified, that in carrying out the agreement made with Mrs. Battle, whereby she deeded to her cosureties the "Ross place," they paid out in the neighborhood of $3,400 in settling with the creditors of the estate; that he, K. L. Worthy and another surety each contributed about $860, while another of the sureties contributed $400, and still another $100. The defendant offered to show by Mrs. Battle that she contributed as her part the "Ross place," the value of which at the time was $1,500; and also offered to prove that the sum received by her cosureties from the sale of that place was $1,500, which amount went towards extinguishing the debts paid by them. The trial judge declined to admit this additional evidence, and ruled that the defendant was not entitled to credit for the amount actually expended by the sureties in discharging the indebtedness of the estate, or credit for the amount realized from the sale by them of the "Ross place," or even for the sum paid by the sureties out of their own pockets in addition to the proceeds of the land contributed by Mrs. Battle. It was, of course, incumbent on the defendant to introduce satisfactory proof that the amount expended by the sureties was paid out in discharging "valid and lawful debts or demands against the estate" which the administrators were under a legal duty to pay. *Clement* v. *Hawkins,* 96 *Ga.* 811. But the ruling of the court was virtually a holding that the equitable plea of subrogation was without merit, and proof in support thereof would be entirely unavailing. This being so, the direction of a verdict can not be upheld, and the judgment denying a new trial must be set aside in order that the defendant may have an opportunity of showing what particular demands against the estate were settled by the sureties. When it is ascertained what was the precise amount paid out by them in satisfying valid claims against the estate, that amount should be credited to the defendant before he is called on to account to the heirs at law for what they may be entitled to receive as distributees of the estate left by their father. Taylor v. Taylor, 8 B. Mon. 419 (48 Am. Dec. 400).

*Judgment reversed. All the Justices concur, except Lumpkin, J., disqualified.*