JUDG-E BULLITT
delivered the opinioh oe the court:
The appellant, for a premium of $14, insured J. B. Lawrence & Co., against loss by fire, from the 25th May, 1858, to the 25t,h May, 1859, “to the amount of $200 on their frame storehouse, situated on the Ohio river, in Ga.llatin county, Kentucky, known as Jackson’s Landing — and $1,200 on their stock of. goods in said storehouse.”
The policy contains this clause : “The interest of the assured in this policy is not assignable unless by the consent of this company manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void.”
It also contains this clause : “In case the above mentioned premises shall at anytime - * * * be appropriated, applied, or used to, or for the purpose of carrying on or exercising therein any trade, business, or vocation, denominated hazardous or extra-hazardous, or specified in the memorandum of special hazards, in the terms and conditions annexed to this policy, or,forcthe purpose of storing therein any of the articles, goods or merchandise in the same terms and conditions denominated hazardous, extra-hazardous, or included in the memorandum of special hazards, except herein specially provided for or hereafter agreed to by this company in writing, to be added to or endorsed upon this policy, then and from thenceforth so *11 long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect.”
One of the conditions annexed to the policy declares that “applications for insurance must specifiy ■ * * *' in relation to the insurance of goods and merchandise, or other personal property, whether or not they are of the description denominated hazardous, extra-hazardous, or included in the memorandum of special hazards. And a false description by the assured of a building, or of its contents, or the concealment of any fact touching the risk to be assumed, * '* * shall render absolutely void a policy issuing upon such description. * * * If after insurance is effected the risk is increased by any means within the control of the insured; or if such building or premises shall be so occupied in any way as to render the risk more hazardous than at the time of insuring, such insurance shall be void.”
There is annexed to the policy an enumeration of not hazardous goods &c., viz: “staple foreign dry goods in packages, and staple domestic dry goods, in stores where no hazardous merchandise is kept, and household furniture in dwelling houses,” which “may be insured at 5 cents per $100 in addition to the rate of the building;” and an enumeration of hazardous goods, &c., viz: oil, sulphur, grocer’s stock, tallow and several other articles, which “subject the building and all its contents to an additional charge of 10 cents per $100;” and dry goods, (general stock of) boots and shoes, flour, teas and other articles, which “are charged 10 cents per $100 in addition to, but do not increase the rate of the building;” and an enumeration -of extra hazardous goods, &c., viz: rosin, spirits of turpentine, and other articles, which “subject the building and all its contents to an additional rate of 20 cents per $100; and china unpacked, fancy goods and other articles, which are charged 20 cents per'$100 in addition to but do not increase the rate of the building:” and a memorandum of special hazards, in which it is declared that “gunpowder, phosphorus and saltpetre are expressly prohibited from being deposited, stored or kept in any building insured, or containing any goods or merchan *12 dise insured by this policy, unless by special consent in writing on the policy.”
Said house and goods were destroyed by fire on the 5th April, 1859, and Lawrence & Co.' afterward assigned their claim upon the policy, to J. L. Eggleston, and joined him in blunging this suit for his benefit, asserting no claim for the loss of the house, but claiming $1,200 for the loss of the goods, and alleging in their petition that the defendant, by its authorized agent, had ascertained the amount of the loss, and promised to pay said sum of $1,200.
The defendant denied the alleged promise, and resisted a recovery upon the following alleged grounds, among others: 1. That Lawrence & Co., when they obtained the insurance, represented themselves as the owners of said house, when in truth they were not. 2. That they had sold and disposed of the goods before the loss, and had no interest therein when the loss occurred. 3. That said house, at the time of the fire, was used to keep and store gunpowder, sulphur, rosin, turpentine and oil.
There was evidence conducing to prove that the adjusting agent of the defendant, after inquiring into the loss, had promised to pay the said sum of $1,200.
It appeared that said storehouse belonged, not to Lawrence & Co., but.to Lawrence, a member of the firm — there was no evidence of any representation on the subject except that furnished by the policy.
It appeared that on the 22d March, 1859, the members of said firm signed a deed conveying said goods to Casey & Yeager, in trust to pay debts due to them and the other creditors of Lawrence & Co.; but there was conflicting evidence upon the question whether or not the deed had been delivered and accepted, so as to take effect between the parties. And there was evidence conducing to prove that an execution remaining in the sheriff’s hands, had been levied on the goods, which, however, were left in the possession of Lawrence & Co.
There was evidence conducing to prove that sulphur, rosin, turpentine, oil and saltpetre were in the house, forming part of the stock of goods at the time of the fire.
*13 There was no evidence that any inquiries were made of the insured as to the character of their stock of goods; no evidence except that furnished by the policy, either as to the character of the goods, when the insurance was obtained, or as to the representations of the insured upon the subject; and no evidence as to the ordinary rate of insurance upon goods not hazardous.
The plaintiffs obtained a verdict and judgment for $ 1,294, being the amount insured upon the goods, with interest, from which judgment the defendant appealed.
1. The first question relates to the affidavit of the plaintiff, J. A. Eggleston, one of the firm of Lawrence & Co., which the plaintiffs were permitted to read to the jury. The 8th condition of the policy required the insured to deliver an account of their loss, with their oath or affirmation, declaring the account to be true and just and several other facts. The defendant denied that the plaintiffs had complied with that condition. Eggleston’s affidavit was admissible to prove such compliance, but for no other purpose; and the court below should have so informed the jury.
2. The next question relates to the effect of the alleged promise by defendant’s agent to pay the loss upon the goods. The court below instructed the jury, in substance, that though the policy had ceased to have any force or effect, by reason of the plaintiffs having kept prohibited articles in the house, yet, if the defendant’s agent, having authority to adjust and pay losses, with knowledge that the prohibited articles were kept in the house at the time of the fire, promised to pay said loss, that they must find for the plaintiffs. This we conceive was. erroneous tortwQ,reasons: First. Authority to the agent to adjust and pay losses, would not give him a right to pay out the money of the defendant where no loss had been sustained, much less to bind the defendant by a promise to do so. Secondly. Conceding the-most ample authority to the agent to bind defendant, yet, if the p'ojioy was void at the time of. the fire, there was no consideration for the promise to pay the loss. We are not prepared to admit that the premium paid to the defendant,.in consideration of its agreement to assume the *14 risk, formed even a moral consideration for its promise to pay a loss sustained by the plaintiffs after they had vitiated the policy by violating its conditions.' As this instruction was given at a former trial, at which the plaintiffs obtained a verdict for $1,200, that verdict was properly set aside by the circuit judge, though not for that reason.
3. It is contended that the policy was void because J. B. Lawrence & Co. did not own said storehouse, and that the court below erred in refusing so to instruct the jury.
Whether or not the insurance upon the house was void, we need not decide. Conceding that it was, it does not necessarily follow that the policy was void as to the goods, which were insured for a separate sum. In many cases policies have been held valid, though the interest of the insured was not correctly described. (1 Phillips on Ins., sec. 640.) In the absence of evidence it cannot be presumed that the plaintiffs procured the insurance upon the house for a fraudulent purpose, or that their supposed interest in the house induced the defendant to insure the goods. Policies upon goods in rented bouses are not unusual. Upon the laets as presented we perceive no reason for excepting this ease from the general rule by which a policy making separate insurance upon several subjects, is treated as separate policies would be. Where a policy made separate insurance upon two buildings, with a clause declaring it void if the insured should alienate the property insured, it was held that an alienation of one of the buildings did not avoid the policy as to the other. (Clarke vs. New England Mutual Insurance Company, 6 Cushing, 342.) That is an authority for the proposition, that if Lawrence & Co. had owned the house, and had sold it after taking the policy, this would not have vitiated the insurance on the goods, though it might have diminished their interest in preserving the house, and, consequently, their intere^ in preserving the goods. And in the case of Loehner & Co. Home Mutual Insurance Company, 17 Mis. (2 Bennet,) 247, it was held that a policy upon a house and its furniture, though void as to the house, because the insured failed to give notice of an in-cumbrance, was not therefore void as to the furniture. We *15 perceive no reason for applying a different principle in this case.
4. The defendant asked the court to instruct the jury that, “ if they believe that the possession of said goods was taken from J. B. Lawrence & Go., by the sheriff or any other person or persons, such change of possession voided the policy, and.defendant is not liable upon it.” In our opinion that instruction was properly refused.
There was no evidence that any one had taken the actual possession of the goods from Lawrence & Co.
Conceding that the sheriff had a constructive possession of the goods, by virtue of the levy of anp execution upon them, still, Lawrence & Co., having the actual possession, had the same power, as well as the same interest, to preseiwe them which they would have had if the execution had not been levied; and the policy continued in force notwithstanding the levy. (Clark vs. New England Mutual Fire Ins. Co., 6 Cushing, 354.)
The deed to Casey & Yeager presents a more difficult question. If that deed had taken effect between the parties, it gave to Casey & Yeager constructive posses.-ion of the goods; and if it terminated the interest of the insured in the goods, or if it was a transfer of their interest within the clause of the policy previously cited, it avoided the policy, and the court should have modified the instruction accordingly, instead of overruling it.
The deed, conceding that it was delivered and accepted, certainly did not terminate the interest of the insured. No release had been executed by their creditors. They were as much interested in preserving the property, so that it might be applied to the payment of their debts-, as if they had retained the legal title. They unquestionably had an insurable interest.
But the question remains, did not said deed, if delivered and accepted, render the policy void under the clause prohibiting “ any transfer of the interest of the insured by sale or otherwise,” without the consent of the insurer ? In 1 Phillips on Insurance, sec. 880, the case of Dadmun Man. Co. vs. Worcester *16 Mut. Fire Ins. Co., 11 Metc. 429, is cited as a decision, that under such a clause, the policy is rendered void by an assignment by the assured to assignees for the benefit of certain of his creditors. But in that case, before the loss occurred the property was sold, under an order of court, in a suit against the assured and his assignees, and the assured had thus been deprived of all interest in it.
It has been repeatedly decided, with reference to policies containing similar clauses, that the policy is not rendered void by a mortgage of the property; (Conover vs. Mutual Ins. Co. of Albany, 1 Comst. 290; 3 Denio, 254; Fulsom vs. Belknap Mutual Fire Ins. Co., 10 Foster, 231;) nor by a sale and conveyance, the grantee having simultaneously re-conveyed to the grantor in mortgage; (Stetson vs. Mass. Mutual Insurance Co., 4 Mass., 330;) nor by a conditional sale ; (Tittemore vs. Vermont Mutual Fire Insuaance Co., 20 Vermont, 546;) nor by a contract to sell and convey at a future day, the purchaser agreeing on that day to pay a certain sum and secure the residue of the purchase money; (Masters vs. Madison Co. Mutual Ins. Co., 11 Barb. S. C. R., 624;) nor by a sale under execution, whilst the assured has a right to redeem, at least in .the absence of proof that the said right is of no value; (Strong vs. Manufacturer's Insurance Co., 10 Pick., 40.) In most of those cases there had been a technical transfer of the title and interest of the insured ; in none of them did the insured retain a greater interest in the property than Lawrence & Co. did in the goods assigned to Casey & Yeager, admitting that the deed had taken effect.
The instruction given at the instance of the plaintiffs, that said deed did not pass the title to the goods, unless “ Cas.ey & Yeager accepted of the same and received and took the possession and control of such goods,” was clearly erroneous; but was not prej udicial to the defendant, because the deed, though it may have passed the titl‘e, did not avoid the insurance.
5. The defendant asked for an instruction, “ that if any of the articles denominated hazardous, extra hazardous, or included in the memorandum of special hazards, were kept or stored in *17 said storehouse during the continuance of said policy, that it became void.”
It is clear that this should not' have been given, because the keeping of those articles, after the issuing of the policy, if prohibited by it, did not, as the instruction assumes, render the policy void, but only suspended it whilst the premises were so used.
6. The defendant asked for an instruction, “that if any articles denominated in the classes of hazards, hazardous, extra-hazardous, or included in the memorandum of special hazards, ■were embraced in the stock at the time of the issuing of the policy, or if the premises were used in keeping or storing any of the above prohibited articles at the time of the fire, then the said policy is void.”
There was neither proof nor allegation authorizing that instruction.
This case cannot be placed upon the same footing as that of the Ky. & Louisville Mutual Ins. Co. vs. Southard, 8 B. M., 634, cited by plaintiffs’ counsel. The conditions and enumerations of hazards above mentioned, formed parts of the policy, as perfectly as if they had been inserted in the body of it. If therefore the keeping by the plaintiffs of the articles mentioned in the instruction was prohibited by the policy, (whether by provisions in the body of it or annexed to it,)' it was not necessary for the defendant to show that the keeping thereof caused the loss or increased the risk. (1 Phillips on Insurance, sec. 866.)
But the keeping of such articles by the plaintiffs, when they obtained the policy, did not render it void, unless they concealed that fact from the defendant.
There was no evidence as to what articles composed their stock at the date of the policy. At the date of the- fire the stock embraced dry goods, fancy goods, groceries, boots and shoes, and many other articles denominated in the policy hazardous or extra-hazardous. If that fact authorized .the jury to infer that the stock embraced the same or similar articles at the date of the policy, they might perhaps have also had a right to infer that the defendant knew that the stock embraced *18 those articles, or waived being informed concerning them. (Angell on Fire and Life Ins., sec. 176; 1 Phillips on Ins., sec. 571; Carter vs Bochm, 3 Burrows, 1905.) And if it had appeared to the satisfaction of the jury, that the defendant, when the policy was issued, knew that such articles were embraced in the stock, and were kept by the plaintiffs for sale, as part of their regular business, possibly the issuing oí the policy upon that stock of goods authorized the plaintiffs to keep those articles for sale, notwithstanding the prohibition contained in the printed parts of the policy. (Bryant vs. Poughkeepsie Mut. F. Ins. Co., 21 Barbour’s S. C. R., 154; Delonguemon vs. Trademan’s Ins. Co., 2 Hall, 589; Moore vs. Protection Ins. Co., 29 Maine, 97; Leggett vs. Ætna Ins. Co., 10 Rich. Law Report, (S. C.) 202.
But we need not decide these questions, and do not propose now to express any opinion concerning them, because the defendant’s pleadings do not allege that any such articles were kept in the store when the policy was issued, or that the plaintiffs made any concealment with reference thereto. Hence the jury would have had no right to declare the policy void, even if it had been proved, that when it issued, the plaintiffs kept those articles and concealed the fact from the defendant.
That part of the instructidn which relates to the keeping “of any of the above prohibited articles at the time of the fire,” was also erroneous, because the defendant’s pleadings charged the plaintiffs with having kept certain specified articles without charging them with having kept any others. The defendant, not being presumed to know what prohibited articles were kept by the plaintiffs, was not bound to specify them in its pleadings. But having done so, specifying some, without alleging that any others were kept by plaintiffs, the jury should not have been permitted to consider any except those specified.
The other instructions we need not notice. Upon the re-stara of the cause the defendant should be permitted, if it «chooses, to amend its answer.
*19 The judgment is reversed, and the. cause remanded for a new trial, and other proceedings consistent with this opinion.