LIZZIE DE LAY, Appellant, v. CARNEY BROTHERS.

100  687
105  290
105  635

**Estoppel:** EVIDENCE. Evidence that defendants had made arrangements with plaintiff's husband that the latter was to build a barn on land belonging to plaintiff, and care for defendant's horses therein, is competent where it is also shown that such arrangement was brought to plaintiff's attention in such manner that she was compelled to act, or be estopped to make any claim for the care of the horses.

**Plea and Proof:** NOTICE. Under an allegation that plaintiff had full knowledge of a certain contract, and was thereby estopped to assert a claim in opposition thereto, defendant may prove either direct notice, or facts from which knowledge may be inferred.

*Appeal from Poweshiek District Court.*—HON. D. RYAN, Judge.

TUESDAY, JANUARY 26, 1897.

ACTION at law to recover for the use and occupation of a certain barn. Defense, a general denial and a plea of estoppel. Trial to a jury, verdict and judgment for defendants, and plaintiff appeals.—*Affirmed.*

*J. H. Patton* and *S. R. Clute* for appellant.

No appearance for appellees.

DEEMER, J.—Plaintiff claims that she is the owner of a certain barn in the city of Grinnell, which the defendants used and occupied for more than four years, and that the reasonable rental· value thereof, for the time it was so used, was two hundred and twenty-eight dollars. The defendants, in answer, filed a general denial, and also pleaded that plaintiff is the wife

of one James De Lay; that, prior to the time it is
claimed they took possession of the barn, said James
De Lay was in their employ, and received as compen-
sation the sum of nine dollars per week; that
on or about December 6, 1889, said De Lay
agreed with defendants that he would build a
barn upon the property which he and his wife were
then occupying as their homestead, and would keep
and care for defendants' horses in said barn, and con-
tinue in their employ as a teamster, on condition that
defendants would pay him ten dollars per week instead
of nine dollars; that, under said arrangement, De Lay
built the barn and kept defendants' horses, and defend-
ants paid him the sum of ten dollars per week, as agreed
upon, until they sold their team, in April, 1894; that
defendants did not request of De Lay that he build
upon or occupy any property belonging to plaintiff, and
did not know, nor do they now, that said De Lay did
so occupy or use any property belonging to the plain-
tiff.   The defendants also pleaded that plaintiff was,
at the time her husband built the barn, residing upon
the lot where the same was built, and had full knowl-
edge of all the terms and conditions under which the
building was erected, and of the fact that her hus-
band was receiving compensation for the use and
occupancy of the same, and that she never in any way
suggested, or intimated, to defendants that she had or
made any claim for the use of the barn until long
after her husband ceased to work for defendants, and
until long after they had paid him in full for his serv-
ices and for the use of the barn; and they say that
plaintiff is now estopped from claiming any compen-
sation for the use, or occupancy, of the premises.
The plaintiff testified that she owned the barn, that
the defendants used and occupied it for the time
named in her petition, and that she never recov-
ered any compensation therefor.   The defendants

introduced evidence in support of the affirmative mat-
ter pleaded by them in defense to the suit, and they also
produced evidence tending to show that the barn was
built by James De Lay under an arrangement by
which he was to build the barn and keep and care for
defendants' horses, and was to receive an advance of
one dollar per week in his wages as consideration
therefor; and, as a part of the agreement, the sum of
ten dollars per month was to be retained from his
wages to pay for the lumber which went into the
barn.    The evidence also tends to show that the
defendants furnished the lumber for the barn, and
that James De Lay paid for it in accordance with his
agreement.    The jury may also have found that
defendants did not know that plaintiffs owned the lot
upon which the barn was erected.    There was also
evidence to the effect that plaintiff stated she was to
receive no rent for the barn so long as her husband
was in the employ of defendants.    James De Lay, who
was a witness for the plaintiff in rebuttal, testified
that he built the barn and paid for it himself.

We have set forth this much of the evidence for
the purpose of showing that the jury may have
found for the defendants upon either one of the two
main issues in the case.    They may have found that
the plaintiff did not own the barn, and therefore was
not entitled to any compensation for its use, or they
may have found defendants' plea of estoppel was fully
established by the evidence.    Either of such findings
would have sufficient support in the evidence.
But appellant claims that the court was in
error in refusing to strike from the testimony
of witnesses Carney and Carver all statements and
conversations between them and James De Lay, for
the reason that the same was incompetent and irrele-
vant, not being in the presence or hearing of the
plaintiff.    We think such evidence was entirely

proper. It was competent and relevant for defendants to show who in fact built the barn, and the contracts and arrangements under which the same was erected. It was also proper for them to show what arrangements they had with plaintiff's husband as to the care of the horses, although the agreements were not had in plaintiff's presence. Of course, such arrangements as they claim they made in this case, would not bind the plaintiff unless the matter was in some manner brought to her attention, so that she was compelled to act in the premises, or else hold her peace. But defendants were not obliged to prove this knowledge by any particular witness or witnesses. They might prove the contract with the husband by one witness, and the plaintiff's knowledge thereof by another; and this they attempted to do in this case. There was no error in the ruling complained of.

II. Some of the instructions are complained of. One, in particular, is assailed because it is said that, while it was proper in a text-book, a law lecture, or in the opinion of an appellate court, yet it was not fit or proper in a charge to a jury. There is no merit in this objection. The instruction announces correct principles of law, and was applicable to the case; and while it proceeds to state some of the reasons why a person may not be allowed to speak the truth under certain circumstances, which may not be usual in instructing juries, yet we see no reason for condemning the instruction on this ground. The reasons given were clearly and tersely stated, and, instead of misleading, they were calculated to assist the jury in arriving at a proper verdict.

III. It is also said that all the instructions given by the court, with reference to the issue of estoppel, omitted the essential element of plaintiff's knowledge of the acts, conduct, and contracts of her husband.

This contention is evidently based upon a misapprehension of the record. It is true that the instructions do not say that plaintiff must have been directly and expressly notified of the contract made by her husband in order to estop her from claiming rent, but they do proceed upon the theory that plaintiff must have known of the acts and contracts of her husband before she would be estopped in this action. In this connection the appellant also claims error in the instructions because, it is said, they do not follow the pleadings, which allege that plaintiff had actual notice of the contracts made by her husband with the defendants. We have heretofore set out the substance of the defendants' answer, and by reference to this it will be seen that they do state that plaintiff had knowledge of the contract under which the barn was built. Under this allegation the defendants could prove not only direct and positive notice or knowledge, but also such a state of facts and circumstances in reference thereto as that a court or jury would be justified in saying that the plaintiff did have notice or knowledge thereof. Defendants were not required to, nor should they, plead the evidence tending to show knowledge. Ultimate facts, only, are to be stated in the pleadings, and any evidence which tends to support these allegations is competent and relevant. The instructions given were applicable to the evidence adduced, and were confined to the issues made by the pleadings. There was no error either in those given or the denial of the plaintiff's requests. We discover no prejudicial error in the record, and the judgment is AFFIRMED.