Thomas C. Watson, Plaintiff in Error, vs. Allen
R. Jones, Defendant in Error.

1. Wherever a party makes a false representation of a material fact
   to a person ignorant thereof, with intention that it shall be
   acted upon, followed by reliance upon and by action thereon,
   amounting to a substantial change of position, and the special
   situation or means of knowledge of the party making the state-
   ment were such that it was his duty to know as to the truth
   or falsity of the representation, such party is in law guilty of
   fraud as much so as if he actually knew that his statement was
   false, and an action for deceit based thereon is not under our
   statute (Section 1294, Revised Statutes) barred until three
   years from "the discovery by the aggrieved party of the facts
   constituting the fraud."

2. Averments in a declaration for deceit, to the effect that defend-
   ant well knew his statements to be untrue, and that his special
   situation or means of knowledge were such as made it his duty
   to know whether his representations were true or false, are
   but different methods of alleging the same ultimate fact—
   knowledge—and a declaration containing both averments is not
   bad for duplicity, nor can it be said to be so framed as to
   prejudice or embarrass the defendant in preparing his defense.

3. When the only relevant fact in issue is whether a judgment has
   in fact been rendered, nothing need be produced but the judg-
   ment entry; but where it becomes necessary to prove that
   a valid judgment has been rendered by which the party offer-
   ing it has acquired, or his adversary has lost, some right or
   title either by the judgment alone or by it and proceedings
   taken for its enforcement, the whole record so far as it con-
   cerns the formal stages, must be produced, or its absence
   properly accounted for.

4. The rule *caveat emptor* applies to sales under mortgage fore-
   closure as well as to other judicial sales; the purchaser at fore-
   closure sale only takes what title the parties to the suit have;
   a prior judgment creditor, not a party to the foreclosure pro-
   ceedings, can enforce his lien by selling the property under his
   execution, even in the hands of the purchaser at such a sale;
   and such judgment creditor has no such right to, or interest

16

in, the proceeds of such a sale as will entitle him to demand, or the master to pay, or the purchaser to require the payment of any portion of such proceeds in satisfaction of such judgment lien, in the absence of a valid order of the court to that effect.

5. Where a master sells property under a decree of foreclosure for more than sufficient to pay the decree, and the decree does not authorize him to sell subject to prior incumbrances, and prior incumbrances are not parties to the foreclosure suit, and after the sale, but before payment of the purchase money, it is discovered that there are prior incumbrances upon the property, and the purchaser, prior incumbrancer, mortgagee and master, without the consent of the defendant in foreclosure, and without an order of the court to that effect, agree that a sufficient amount of the purchase money be paid over to such prior incumbrancer to satisfy his claim, and the surplus only is credited upon the foreclosure decree, and this action of the parties is never ratified by the mortgagor or the court, and no judgment for deficiency is ever entered against the mortgagor, the mortgagee has no standing upon which to enforce a claim for a balance asserted by him to be due upon his decree.

6. In actions for deceit the scienter can be established by either one of three phases of proof, showing: First, that the party made the representation with actual knowledge of its falsity; second, that the party, having no knowledge whether the statement was true or false, made the statement as of his own knowledge or in such absolute, unqualified and positive terms as to imply knowledge on his part; or, third, that from the party's special situation or means of knowledge it was his duty to know as to the truth or falsity of the statement made, and where there is evidence tending to prove the scienter in the second phase, as well as in the first and third, it is not error to refuse an instruction to the effect that defendant will be entitled to a verdict unless it is proven that he had actual knowledge of the falsity of his statement at the time he made it, or that from his special situation or means of knowledge it was his duty to know as to the truth or falsity of the statement made by him.

Writ of error to the Circuit Court for Escambia county.

*Statement.*

On February 10, 1894, defendant in error began an action on the case for deceit against plaintiff in error in the Circuit Court of Escambia county.  The seventh or additional count added to the declaration as an amendment by leave of court alleges "and because, *to-wit*: on the 18th day of August, 1885, the defendant, then and there being the agent of one John D. Gray, and for the benefit and advantage of him, the said defendant, as agent of John D. Gray, craftily and fraudulently procured and induced the plaintiff to make a loan of two thousand dollars to said John D. Gray on a mortgage upon certain real estate, which real estate the said defendant falsely and fraudulently represented to be free of incumbrances, whereas, as defendant well knew or ought to have known, the said real estate was subject to the prior lien of a judgment of this honorable court, of which plaintiff was ignorant, and which would have prevented plaintiff from making said loan had he had knowledge of it, and the said defendant concealed and continued to conceal the same, and the plaintiff remained in ignorance of it until after the foreclosing of the said mortgage, to-wit: on the 24th day of November, 1891, and by reason of the said judgment lien plaintiff realized from the said security upon the foreclosure thereof one thousand and fifteen and 94-100 dollars, less than amount to which he was entitled under the provisions of the decree of foreclosure, whereby the said one thousand and fifteen and 94-100 dollars has been lost to the plaintiff."

The defendant moved to strike this count because, first, it states two causes of action; second, it is double; third, the defendant can not properly set forth his defences thereto as framed.  Defendant also filed a spe-

cial demurrer to this count, the grounds thereof being
the same as the motion to strike. The motion and de-
murrer being overruled defendant filed two pleas as fol-
lows: "1st. That he is not guilty. 2nd. That said
count is based on transaction connected with the loan by
plaintiff to J. D. Gray of $2,000 on the 19th day of
August, 1885, and was completed on said date, at which
time the alleged causes of action, if any there were, ac-
crued to plaintiff, and this was more than three years
before the institution of this suit." Plaintiff replied to
the second plea, "that by reason of the matters and
things stated in the 7th count of the declaration he did
not discover the existence of said judgment, until within
three years before the institution of this suit." The de-
fendant demurred to this replication as being "bad in
law and substance, and insufficient answer to said plea."
The demurrer being overruled, defendant joined issue
on the replication, plaintiff joined issue on defendant's
plea of not guilty, and the parties proceeded to trial,
which resulted in verdict and judgment for plaintiff in
the sum of $1,273.51 and costs. Defendant's motion
for a new trial being refused, he sued out the present
writ of error from the judgment rendered against him.

There was evidence on behalf of plaintiff tending to
prove the following facts: In 1885 defendant was agent
for John D. Gray, and in August of that year he ap-
proached plaintiff with a view of procuring a loan of
$2,000 for Gray upon the security of a mortgage upon
certain real estate in Pensacola. Plaintiff asked him if
there were any liens upon the property, and defendant
replied there was a mortgage to a building and loan
association which would be paid from the loan. Plain-
tiff told defendant he must have the records examined
and an abstract made of the title to the property, so as
to be sure that the title was good and unincumbered,

as he wanted a first lien if he made the loan. Subsequently the defendant, by representing to plaintiff that he had examined the title to the property, and that the title was good and unincumbered, procured from plaintiff for Gray $2,000, which was secured by a mortgage upon the property executed by Gray and wife, dated August 18, 1885. Defendant, as Gray's agent, paid the interest on the mortgage until December, 1890, when he ceased to be agent for Gray, and plaintiff in March, 1891, began suit to foreclose his mortgage. The foreclosure suit was brought against John D. Gray individually and as administrator of Margaret E. Gray, his wife, who died after the execution of the mortgage, and Thomas C. Watson, the defendant, who was alleged to have purchased all the interest of John D. Gray as an heir of his wife in the property embraced in the mortgage, from one J. J. McCaskill who had purchased such interest at a public sale under execution against John D. Gray. Decrees *pro confesso* were entered against the defendants in the foreclosure suit, and thereupon the court entered a decree of foreclosure for the sum of $2,177.66 for principal and interest, and $217.76 for attorney fees, and directed that the mortgaged property be sold by Hunt Chipley, special master, at public sale to the highest bidder; that he execute to the purchaser a due and formal conveyance, upon production of which the purchaser should be let into possession; that from the proceeds of sale there be paid, first, the costs of sale; second, the costs of the foreclosure suit; third, the amount decreed to complainant, principal and interest; fourth, the surplus into the registry of the court to abide the further order of the court; and that the master report to the court his proceedings under the decree. On March 8, 1892, the special master filed his report showing the following facts: that in accordance

with the decree of foreclosure, and in the manner therein described, he, on January 4, 1892, sold the mortgaged property at public auction for the sum of $2,525 to Louis Boley, and executed to said Boley a deed, and received said sum as purchase price. He accounts for the disposition of said sum by stating that there appeared on the records of the Circuit Court of Escambia county a judgment against John D. Gray in favor of L. Bear & Co. of a date prior to the mortgage foreclosed, which constituted a prior lien against the property, amounting with interest to $1,015.90; that there was a contention between L. Bear & Co. and complainant as to the payment of said judgment, and by agreement of complainant's solicitors he accepted from Boley a written agreement obligating himself to pay said sum of $1,015.90 to L. Bear & Co. or the complainant, as the one or the other might thereafter be determined to be entitled to the same; that he received in cash from Boley the sum of $1,509.10, from which he paid costs of suit and of sale $85.14, attorney's fees $217.76, to complainant A. R. Jones $1,185.20, and the balance, amounting to $21.00 he had deposited in the registry of the court. This report does not appear to have ever been confirmed.

Plaintiff then offered in evidence the rules judgment book of the Circuit Court of Escambia county showing entries therein in the case of L. Bear vs. John D. Gray of a default for failure to plead, dated August 4, 1884, and a final judgment in the same case dated August 13, 1884, for $634.79, both entered by the clerk of the court. He also offered the index to said judgment book correctly showing the page where the default and judgment were recorded, and also the judgment and execution docket of said court showing docketing of said judgment, the date of issuance of execution there-

on, and correct indexing thereof. Defendant objected to this evidence upon the ground that evidence of the record of the whole proceedings upon which judgment was based must be produced, or absence thereof accounted for. The court overruled this objection, and defendant excepted. Plaintiff then introduced evidence tending to show that at the date of the Bear judgment John D. Gray was the owner in fee of the property subsequently mortgaged to plaintiff, but that after the rendition of the judgment, and prior to the execution of plaintiff's mortgage, Gray conveyed the property to one Ackerman, who thereupon conveyed to Margaret E. Gray, wife of John D. Gray, in whose name the property stood at the time plaintiff's mortgage was executed. Plaintiff also introduced evidence tending to show that after Boley bid $2,525 for the property at the foreclosure sale he had the title investigated and found that the Bear judgment was a lien on it; that when Boley paid the amount of his bid to the special master, there was deducted on account of the judgment the sum of $1,-015.90, which was afterwards paid by Boley to Bear on account thereof; also that at the time of the foreclosure sale the property was only worth $2,525, and under the advice of his attorney plaintiff considered it more advantageous to accept Boley's bid and pay Bear the amount of the judgment lien than to have a resale of the property, and as this cause was best for all parties concerned, it was pursued.

Exception was taken to the following instruction given by the court: "If you should find for plaintiff, you will assess his damages at what his loss was by relying upon the representations, and that will be what he failed to realize from the foreclosure of the mortgage on the property by reason of the judgment against the property having to be satisfied out of the proceeds of the

sale." and to the refusal to give the following instructions requested by defendant: 1st. "If you find from the evidence that the defendant acted in good faith in making any representations made by him, and honestly believed that they were true, then, even though they were false and his duty to know the truth was such as to fix liability upon him therefor, plaintiff can not recover if the transaction was completed more than three years before the bringing of this action." 2nd. Same language with the addition of the following words: "even though such falseness was not discovered by plaintiff until less than three years before that time." 5th. "If you believe from the evidence that the defendant Watson had no knowledge of the existence of the judgment mentioned in the declaration at time the plaintiff loaned the money to Gray; and further believe that Watson was not in the business of examining and passing upon titles to real estate at said time, and that it was not his duty, under his relations with plaintiff in making this loan, to have known of the existence of said judgment, you will find for the defendant." 6th. "In order to find for the plaintiff in this case you must believe that the defendant Watson, with full knowledge of the existence of said judgment, represented to said plaintiff with intent to defraud him that there was no such judgment lien, or that defendant Watson wilfully represented, with intent to defraud the plaintiff, that there was no such judgment lien when it was his duty to have known of the existence of the same." Other facts are referred to in the opinion.

The facts in the case are stated in the opinion of the court.

*Maxwell & Maxwell and John Eagan,* for Plaintiff in Error.

*John C. Avery and William Fisher*, for Defendant in Error.

CARTER, J. (*After stating the facts.*)

I. The rulings upon the special demurrer, the motion to strike, and the demurrer to the replication to the second plea, constitute the basis of the first three assignments of error. We shall consider them all together for in disposing of the demurrer and motion we incidentally determine the sufficiency of the replication to the plea. The demurrer and motion present the same identical question, the pleader being uncertain whether his objection ought to be taken by special demurrer or by motion. His objection to the declaration relates to the use of the words "well knew or ought to have known" in the allegation of the *scienter*. He does not contend that this form of allegation is bad because in the alternative, nor that it renders the declaration uncertain or insufficient. He expressly admits that either form "knew" or "ought to have known" states an actionable knowledge of falseness; and he confines himself to the argument that defences may be interposed to a count alleging that he "ought to have known" different from those admissible to a count alleging that he "knew" of the existence of the judgment lien at the time he made the alleged representation, and that he was therefore embarrassd in preparing his defence to a count alleging that he "knew or ought to have known." He argues that under section 1294, Revised Statutes, prescribing a limitation of three years in actions "for relief on the ground of fraud the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud," in an action for deceit in which it is charged that defendant

"knew" his representation to be false, the cause of action accrues from the "discovery by the aggrieved party of the facts constituting the fraud," while in a similar action in which it is charged that defendant "ought to have known" the falsity of his representations, the cause of action accrues from the time plaintiff acted upon the false representations, without reference to the time he discovered the facts constituting the fraud. From these premises he concludes that the count, being framed upon the theory that defendant "knew," as well as upon the theory that he "ought to have known" that his representation was false, was bad for duplicity, and framed so as to embarrass him in pleading the statute of limitations as a defence.

The defendant in error contends that in actions for deceit it is only necessary to allege the *scienter* generally, *i. e.*, that defendant "knew" his representation to be false; that under this general allegation it may be proved that the representation was made either, first, with actual knowledge of its falsity; second, without knowledge either of its truth or falsity, or, third, under circumstances in which the person making it ought to have known if he did not know of its falsity; that the allegation in this declaration that "defendant well knew or ought to have known" that his representations were false does not charge different causes of action as to which different defences may be interposed, but at most indulges in a possible ambiguity of intimation as to the character of evidence intended to be introduced to prove the *scienter*, and that if the words "ought to have known" had been omitted from the count, the count would still have been provable by evidence that defendant "ought to have known." He insists that we should either reject those words as surplusage, or hold that the pleading be construed most strongly against him, there-

by confining him to proof that defendant "ought to have known." To reach a correct conclusion amid these conflicting views it will be necessary for us to ascertain the general nature and characteristics of an action on the case for deceit. In Williams v. McFadden, 23 Fla. 143, 1 South. Rep. 618, the court say "the gist of the action for deceit is that the defendant made false representations, knowing them to be untrue. It naturally follows that if the representations, though false, were believed to be true by the vendor (defendant), that he could not be held responsible in this form of action." In Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, it is said that "a false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance." The very name of the action, "deceit," implies that it is and must be founded on fraud. For this reason the action for deceit is not an appropriate remedy to relieve against negligence, accident or mistake, or in which to recover for breach of contract, or upon a warranty, though it seems that an action on the case for breach of an express warranty or for false warranty will lie, in which neither allegation nor proof of *scienter* is required. Shippen v. Bowen, 122 U. S. 575, 7 Sup. Ct. Rep. 1283. It is not pretended that this action can be considered as one for damages for a false warranty or for breach of an express warranty. The action being for deceit is necessarily founded in fraud, and in order to make out a case of fraud, as distinguished from inadvertence, mistake, negligence, accident and the like, it is necessary to allege and prove the *scienter*—the knowledge of defendant that his representations were false. Binnard v. Spring, 42 Barb. 470;

Holmes v. Clark, 10 Iowa, 423. This is generally held to be the rule both in England and America, and the distinction between fraud and warranty, between deceit and honest mistake, should not be lost sight of, nor should the action for deceit be confounded with other actions at law or in equity in which no proof of *scienter* is required. The courts are not entirely harmonious as to the quantity and character of proof necessary to sustain the allegation of *scienter* in cases of this character. The English doctrine, as announced in the comparatively recent case of Derry v. Peek, L. R. 14 App. Cas. 337, which reviews many previous decisions, is that in order to maintain an action for deceit there must be proof of fraud; that fraud may be proved by showing that a false representation has been made, first, knowingly, second, without belief in its truth, third, recklessly careless whether it be true or false; or in other words, in order to prevent a false statement being fraudulent there must be an honest belief in its truth. In Alabama, Colorado, Nebraska and some other States the courts do not seem to require proof of *scienter* in cases where the party making a false representation professes to speak from his own knowledge. Munroe v. Pritchett, 16 Ala. 785, S. C. 50 Am. Dec. 203; Jordan v. Pickett, 78 Ala. 331; Goodale v. Middaugh, 8 Colo. App. 223, 46 Pac. Rep. 11; Johnson v. Gulick, 46 Neb. 817, 65 N. W. Rep. 883. In other States the charge of fraudulent intent in actions for deceit may be maintained by proof of a statement made as of a party's own knowledge which is false, provided the thing stated is not merely a matter of opinion, estimate or judgment, but is susceptible of actual knowledge, in which case it is deemed that the fraud consists in stating that the party knows the thing to exist when he does not know it to exist, and in such cases a belief of its existence will not warrant or excuse

a statement of actual knowledege. Fisher v. Mellen, 103 Mass. 503; Chatham Furnace Co. v. Moffatt, 147 Mass. 403, 18 N. E. Rep. 168; Hadcock v. Osmer, 153 N. Y. 604, 47 N. E. Rep. 923; Bullitt v. Farrar, 42 Minn. 8, 43 N. W. Rep. 566. It is also held in these States that if the representations were not made as of the party's own knowledge, then the evidence must show that the party knew them to be untrue, and evidence that he had reasonable cause to believe that they were untrue will not constitute sufficient proof of *scienter*. Pearson v. Howe, 1 Allen, 207; Stone v. Denny, 4 Met. 15; Tryon v. Whitmarsh, 1 Met. 1, S. C. 35 Am. Dec. 339; Marsh v. Falker, 40 N. Y. 562; Marshall v. Fowler, 7 Hun, 237; McKown v. Furgason, 47 Iowa, 636. The question was considered by this court in Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, and the defendant in error relies upon the decision in that case in support of the position assumed by him in this one. It is there said that the *scienter* may be proved by showing, first, actual knowledge of the falsity of the representation by defendant; second, that defendant made the statement as of his own knowledge, or in such absolute unqualified and positive terms as to imply his personal knowledge of the fact, when in truth defendant had no knowledge whether the statement was true or false; or, third, that the party's special situation or means of knowledge were such as to make it his duty to know as to the truth or falsity of the representation. Under each phase the proof must show that the statement was in fact false, and in addition, under the first, that defendant had actual knowledge that it was false; under the second, that defendant made the statement as of his own knowledge, when in fact he had no knowledge whether it was true or false, which seems to bear a close resemblance to the English rule, "without belief in its

truth, or recklessly careless whether it be true or false;"
and under the third, that defendant's special situation
or means of knowledge were such as made it his duty
to know as to the truth or falsity of the representation.
From this statement it is quite evident that proof suf-
ficient to sustain the third phase tends very strongly to
sustain the idea that the defendant had actual knowl-
edge of the falsity of his statement; for when it is shown
that the statement was material and false, and that the
defendant's situation or means of knowledge were such
as to make it incumbent upon him as a matter of duty
to know whether the statement was true or false, the
conclusion is almost irresistable that he did know that
which his duty required him to know. For this reason
the law conclusively presumes from the existence of
these facts that defendant had actual knowledge of the
falsity of his statement, or, more properly speaking,
proof of these facts is sufficient to sustain a charge of
actual knowledge, dispensing with further proof upon
that subject, and admitting no proof to rebut the fact
of actual knowledge, but only proof to rebut the exist-
ence of the facts from which such actual knowledge is
inferred. We are therefore of opinion that proof of
*scienter* in the third phase does not give another or dif-
ferent right or ground of action from that given by
proof under the first phase, but that it simply establishes
the same ultimate fact, *viz*: knowledge, by a different
class of evidence, and consequently that an allegation
that defendant "knew" his representation to be false is
provable by evidence embraced in the third phase. In
other words, an averment that defendant's situation or
means of knowledge were such as made it his duty to
know whether his statement was true or false, and an
averment that defendant well knew his statements to
be untrue, are but different methods of stating the

same ultimate fact, *viz*: knowledge.    McBeth v. Crad-
dock, 28 Mo. App. 380; DeLay v. Carney Bros., 100
Iowa, 687, 69 N. W. Rep. 1053.    Without committing
ourselves to the proposition that the words "ought to
have known" are in pleading a sufficient allegation that
the defendant's special situation or means of knowledge
were such as to make it his duty to know as to the
truth or falsity of his representation, but treating them
as such, because both parties agree that they are, we
think that allegation in this declaration is merely an
alternative, cumulative and superfluous statement of the
same ultimate fact, *viz*: knowledge, admitting of no
other or different defence or evidence than the allega-
tion which it follows, that "defendant well knew," and
that its presence in the declaration did not therefore
render the pleading bad for duplicity, or so framed as
to embarrass the defendant in preparing his defence.
A case made out by proof that defendant fraudulently
made an untrue material statement where his special
situation or means of knowledge made it his duty to
know whether that statement was true or false, presents
a pure case of fraud and deceit, as much so as if defend-
ant actually knew his statement to be false.    In either
case the action is one "for relief on the ground of fraud,"
and the cause of action accrues from the "discovery by
the aggrieved party of the facts constituting the fraud."
These conclusions sustain the rulings of the court below
denying the motion to strike and overruling the special
demurrer to the declaration embraced in the first and
second assignments of error, as well as the ruling upon
the demurrer to the plaintiff's replication to defendant's
second plea embraced in the third assignment of error.

II. The fourth error assigned relates to the ruling
admitting in evidence the entries of default and final
judgment in the case of L. Bear v. John D. Gray.    The

objection urged was that the entries offered were only parts of the record. The defendant in error contends that the entries offered showed a perfect final judgment, emanating from a court of general jurisdiction, that the judgments of all courts of general jurisdiction are presumed to be valid, and to have been rendered in the exercise of jurisdiction regularly obtained, that the entries offered proved the existence of the judgment as a fact, and that he was not required in this case to prove more than its bare existence. There are authorities which hold, in accordance with the argument of defendant in error, that where a judgment is relied on as an estoppel or as establishing any particular state of facts of which it is the judicial result, it can be proved only by offering in evidence a complete and duly authenticated copy of the entire proceedings in which the judgment was rendered, but that where the only direct object to be subserved is to show the existence and contents of such judgment, a properly authenticated copy of the judgment entry of a court of record possessing general original jurisdiction is admissible without more, and on being admitted all the legal incidents attach which the law annexes to judgments of that class. Gibson v. Robinson, 90 Ga. 756, 16 S. E. Rep. 969; Rainey v. Hines, 121 N. C. 318, 28 S. E. Rep. 410. Unquestionably when the only relevant fact in issue is whether a judgment has in fact been rendered, nothing need be produced but the judgment entry, but where it becomes necessary to prove that a valid judgment has been rendered by which the party offering it has acquired, or his adversary has lost, some title or right, either by the judgment alone or by it and proceedings taken for its enforcement, we think the whole record, so far as it concerns the formal stages, must be produced. Freeman on Judgments, §407. There is much force in the

remarks of Judge CAMPBELL, in Kenyon v. Baker, 16 Mich. 373, S. C. 97 Am. Dec. 158: "No judgment can be lawfully given by any court until a suit has been commenced, and the defendants have been brought in and a trial or default had. Our practice allows all of these steps to be shown without making up any formal judgment record, as required by the old practice. But no judgment can stand until the jurisdiction of the court appears in some way, and no presumption can arise from an entry which has no previous steps to explain or warrant it." There certainly is no hardship in requiring the party offering the judgment to produce the entire judgment record proper, or account for its absence in some recognized manner. The whole is as readily accessible as a part, and without the whole the part can only be sustained by indulging in presumptions as to what the whole would show if introduced, or at least presuming that the whole if introduced would not show that the court has no jurisdiction to render the judgment. Presumptions are from necessity and upon grounds of public policy indulged to support judgments of courts of general jurisdiction where the record does not disclose that the court had no jurisdiction, but it would not only be unnecessary, but extremely dangerous to indulge such presumptions where only a part of the whole of an accessible record is offered, and especially where, as in this case, the parts offered did not affirmatively show jurisdiction. These views find strong support in previous decisions of this court. Thus in Donald v. McKinnon, 17 Fla. 746, and McGehee v. Wilkins, 31 Fla. 83, 12 South. Rep. 228, it was held that copies of the judgment entries alone offered to sustain a sheriff's sale under execution issued thereon, were inadmissible unless accompanied with transcripts of the record of the judgments. It is true these judgments emanated from courts

of limited jurisdiction as to which no presumptions are indulged, but the same rulings were made as to Circuit Court judgments in Davis v. Shuler, 14 Fla. 438; Simmons v. Spratt, 20 Fla. 495, and Ashmead v. Wilson, 22 Fla. 255. The printed report of the latter case does not disclose fully the circumstances under which the judgment mentioned was offered, but we have referred to the transcript of the record on that appeal, and ascertain that the defendants offered in evidence a sheriff's deed to Martin Griffin, one of the defendants, purporting to convey the land in controversy, based upon an execution sale under a judgment from the Circuit Court of Duval county in favor of Robt. J. Woods, and against C. P. Devereaux and Emily R. Wilson, executor and executrix of the estate of C. Parkhurst, deceased, and James Y. Wilson. In connection with the deed defendants offered the default and final judgments entered in said suit by the clerk, but no other parts of the record. Judge McWHORTER delivering the opinion in that case, speaking of the judgment, says: "It was not competent evidence. 'It was part only of a record.' The whole record, or an authenticated or sworn copy of the whole, should be produced.'" See, also, the remarks of Judge RANDALL, in Stark v. Billings, 15 Fla. 318, and in Walls v. Endel, 20 Fla. 86. In this case it was necessary for defendant in error to prove a valid judgment, of a certain date and for a definite amount, not only to show that Watson's alleged representations were untrue, but to fix the amount of special damages claimed in the declaration, and we think the court erred in admitting the isolated entries of the judgment by default and final judgment, without requiring the production of the whole record proper, or requiring its absence to be accounted for.

III. The defendant Watson offered in evidence a

letter from John D. Gray, dated August 2, 1885, which the court excluded as being irrelevant and immaterial, and upon this ruling the fifth assignment of error is based.   This ruling was correct.   The letter contained no reference to negotiations for a loan from the plaintiff Jones, but did refer to a loan from a third person, J. S. Leonard, which was not shown to have had any connection with the loan from plaintiff.   No evidence was offered connecting this letter in any manner with any issue in the case, and upon its face it was entirely irrelevant and immaterial.

IV.  The sixth assignment of error complains of the instruction given by the court, quoted in the preceding statement of facts, and the twelfth complains of the ruling denying defendant's motion for a new trial which questioned the sufficiency of the evidence to support the verdict.   It is urged in support of these assignments that the property covered by Jones' mortgage sold for more than enough to pay the mortgage debt, and that the debt would have been paid in full, but for the wrongful diversion of a portion of the proceeds with plaintiff's consent to payment of the Bear judgment.   It is insisted by defendant in error that this question was not raised or argued in the Circuit Court, and for that reason we should not consider it.   It appears from the record that the instruction complained of was excepted to by incorporating it in the motion for a new trial, and that the motion for new trial was duly made, and the ruling denying it duly excepted to.   These exceptions are clearly sufficient to present the question.   There is nothing in the record to show that the very point was not raised and discussed in the lower court, and plaintiff in error in his brief insists that "the point was distinctly raised by us below for the purpose of insisting upon it, and is now squarely presented by the record."   It appears from the

transcript that the mortgaged property was knocked off
to Boley, the highest bidder, for an amount more than
sufficient to pay the mortgage debt, and that before
completing his purchase Boley had the title investigated,
and found that the property was encumbered by the lien
of a prior judgment in favor of L. Bear. The judgment
creditor, although he was not a party to the foreclosure
proceedings, demanded that his judgment be paid from
the proceeds of the sale, and the plaintiff and the mas-
ter and the purchaser, without any authority from the
court, consented that this be done, which was wholly
unauthorized. The judgment creditor was a prior in-
cumbrancer, whose rights were paramount to that of
the mortgage plaintiff. The purchaser at the foreclos-
ure sale could only take what title the parties to the suit
had, and the prior judgment creditor not being a party
to the foreclosure proceedings could enforce his lien by
selling the property under his execution, even in the
hands of such purchaser. Broward v. Hoeg, 15 Fla.
370. The master's sale could give nothing but a title
subject to the Bear judgment, and the judgment cred-
itor could therefore have no interest in, or right to, any
of the proceeds of such sale. Caldwell v. Houser, 108
Ala. 125, 19 South. Rep. 796; Freeman on Executions,
§447; Moseley v. Doe, *ex dem.* Edwards, 2 Fla. 429;
Howe v. Robinson, 20 Fla. 352. It is not pretended that
the master undertook to sell the property free from in-
cumbrances, or that the decree authorized him to do so,
or that the purchaser was misled in any way to believe
that he was, when he bade for the property getting a
clear title, nor was there any showing of mistake, acci-
dent or fraud entitling the purchaser to be relieved from
his bid, nor did the purchaser before completing the sale
apply to the court for relief from his bid. It is true he
did not have actual knowledge of the existence of the

judgment lien at the time of the sale, but he must be presumed to have known that as the master did not purport to sell clear of liens, he was purchasing subject to any prior lien of record affecting the land offered for sale. The rule *caveat emptor* applies to sales under mortgage foreclosure as well as other judicial sales, and while it may have been within the power of the court to relieve him from his bid upon prompt application before he accepted a deed and paid over his money, yet he made no application of this kind, but insisted upon his purchase and that the prior lien should be discharged from the proceeds of his purchase. This he clearly had no right to do; nor did the judgment creditor have any right to insist that any portion of the proceeds of the sale be paid to him; nor did the master have authority to clear the title by discharging the lien of a prior incumbrancer not a party from the proceeds of sale, without directions to that effect from the court. Osterberg v. Union Trust Co., 93 U. S. 424; Brooks v. Brooke, 12 Gill & J. (Md.) 306, S. C. 38 Am. Dec. 310; Duvall v. Speed, 1 Md. Chy. 229; Clark & Leonard Investment Co. v. Way, 52 Neb. 204, 71 N. W. Rep. 1021. The plaintiff in the mortgage foreclosure consented to these unauthorized acts, which were never approved by the court, and he is in no situation to claim that a balance is due him upon his mortgage. A case quite similar to the one at bar is that of Bache v. Doscher, 67 N. Y. 429. There it appeared that a judgment of foreclosure was entered for $2,508.94, and a referee was appointed to sell the mortgaged premises. He was directed to make the sale, execute a deed to the purchaser, and from the proceeds of sale to retain his fees and expenses, and the amount of any liens for taxes and assessments, and to pay the costs of attorneys, the amount due upon the mortgage and to deposit the surplus, if

any, with the chamberlain of the city of New York. In pursuance of the judgment the property was advertised and sold, the plaintiff mortgagee becoming the purchaser at $9,700. The referee reported that he disposed of the proceeds of sale by allowing the plaintiff $1,-191.95 for taxes and assessments and $6,091.25 for prior mortgages assumed by him; that he deducted his charges and expenses and paid the costs and paid over to plaintiff $1,802.32, leaving a deficiency upon the mortgage debt of $741.55. There was nothing in the complaint or judgment of foreclosure about any prior mortgages, nor were any prior mortgagees made parties to the foreclosure suit. The plaintiff mortgagee sued the defendant for the amount of the deficiency. The court held that no recovery could be had, that from the facts stated "it appears that there was no deficiency and that the plaintiff had in his hands ample money to pay the mortgage and leave a surplus." We are of the opinion that the court erred in giving the instruction complained of, and also in refusing the motion for a new trial.

V. The first and second instructions requested by defendant, embraced in assignments of error Nos. 7 and 8, were properly refused for reasons already stated. Wherever a party makes a false representation of a material fact to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to a substantial change of position, and the special situation or means of knowledge of the party making the statement were such that it was his duty to know as to the truth or falsity of the representation, such party is in law guilty of fraud as much so as if he actually knew that his statement was false, and an action for deceit based thereon is not under our statute barred until three years from

"the discovery by the aggrieved party of the facts constituting the fraud."

VI. In Wheeler v. Baars, 33 Fla. 696, 15 South. Rep. 584, it is held that the knowledge by the maker of the representation of its falsity, or, in technical phrase, the *scienter*, can be established by either one of three phases of proof showing, first, that the party made the representation with actual knowledge of its falsity; second, that the party having no knowledge whether the statement was true or false, made the statement as of his own knowledge or in such absolute, unqualified and positive terms as to imply knowledge on the part of the person making it; or, third, that from the party's special situation or means of knowledge it was his duty to know as to the truth or falsity of the statement made. In that case the first, second and fourth counts of the declaration charged that defendant knew his alleged false representation to be untrue; the third, that he "ought to have known" its falsity, while the other counts (except one common count) appear to have been framed upon a false warranty, without alleging any *scienter*. Upon the question of *scienter* the defendant in that case requested several instructions, all embracing the idea that he would be entitled to a verdict unless it was proven that he knew at the time he made the statement that it was untrue. The court below refused these instructions and the ruling was sustained by this court. Judge TAYLOR there speaking for the court says: "As an abstract, broad, general proposition of law, it is quite true that no recovery can be had in an action of this kind unless the maker of the representation knew it to be false when made, and that he made it with intention to deceive, but the proof of such knowledge or *scienter* is sufficient if it establishes a case falling within either of the three phases pointed

out. \* \* \* It was not enough, therefore, for the court, under the proofs here, to simply say to the jury in the language of the refused instructions 'that the plaintiff could not recover in the absence of satisfactory proof that the defendant made the representation knowing it to be false.' Had these charges proceeded further after the announcement of the general proposition that *scienter* must be shown, with an explanation of the rules touching the three phases of proof that the law deems sufficient to establish such *scienter*, then it would have been proper to have given them, but in the form presented they are too general and calculated to mislead."

For the same reasons the court below correctly refused instructions Nos. 5 and 6 requested by the defendant in this case, embraced in the ninth and tenth assignments of error. There was evidence on the part of the plaintiff tending to show that defendant made the alleged false statement as of his own knowledge, and in positive unqualified terms, and also tending to show that defendant had actual knowledge that his representation was untrue. There was evidence on the part of defendant tending to show that he did not make the alleged statement; that he did not undertake to investigate the records to ascertain if there were any liens upon the property; that he never made any such investigation, and that he had no knowledge whatever as to whether there were any liens upon the property other than the building and loan mortgage. Upon this state of the evidence it was not proper for the court to direct the jury to find for defendant if they found that he did not know, and that his situation "did not make it his duty to know," that his representation was false, as requested in the refused instructions. Even if the propositions asserted therein were abstractly correct as applied to

the first and third phases of proof of *scienter*, they did not embrace the second phase as to which there was some evidence, and they were therefore properly refused. McBeth v. Craddock, 28 Mo. App. 380; Caldwell v. Henry, 76 Mo. 254.

VII. The eleventh assignment of error is not argued, and we treat it as abandoned.

The judgment of the Circuit Court is reversed, and a new trial granted.